PEOPLE v PRICE

Docket No. 173653. Submitted October 4, 1995, at Escanaba. Decided December 15, 1995, at 9:05 A.M. Leave to appeal sought.

Gregory P. Price was convicted by a jury in the Van Buren Circuit Court, William C. Buhl, J., of involuntary manslaughter and operating a motor vehicle while under the influence of a controlled substance and thereby causing death in connection with an accident in which the defendant, while operating a motor vehicle, struck and killed a pedestrian. The defendant was sentenced to concurrent terms of ten to fifteen years in prison for the convictions. The defendant appealed.

The Court of Appeals *held:*

1. The defendant's convictions and sentences for both involuntary manslaughter and OUI causing death do not violate the Double Jeopardy Clauses of the Michigan and United States Constitutions. The statutes are aimed at prohibiting conduct affecting distinct societal norms, and the penalty provisions of the statutes evidence a legislative intent to authorize punishment for both offenses.

2. Application of the federal test to determine legislative intent provided in *Blockburger v United States,* 284 US 299 (1932), shows that each of the offenses contains an element not included in the other and, therefore, that the offenses are not the same. Double jeopardy does not bar the multiple punishment in this case.

3. Error requiring reversal did not occur with regard to the defendant's remaining arguments of error.

Affirmed.

1. CRIMINAL LAW — HOMICIDE — AUTOMOBILES — DOUBLE JEOPARDY.

The statute that prohibits involuntary manslaughter and the statute that prohibits operating a motor vehicle while under the influence of a controlled substance and thereby causing death are aimed at prohibiting conduct affecting distinct societal norms, evidencing the Legislature's intent to permit punish-

REFERENCES
Am Jur 2d, Criminal Law §§ 131, 137-139, 266.
See ALR Index under Double Jeopardy; Intent.

ment for both offenses; because each offense contains an element not contained in the other, they are not the same offense and double jeopardy does not bar multiple punishment for conviction of both offenses (MCL 257.625[4], 750.321; MSA 9.2325[4], 28.553).

2. CRIMINAL LAW — AUTOMOBILES — OPERATION OF MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF A CONTROLLED SUBSTANCE AND THEREBY CAUSING DEATH.

The crime of operating a motor vehicle while under the influence of a controlled substance and thereby causing death is a strict liability offense that does not violate the constitution in not requiring proof of intent for conviction (MCL 257.625[4]; MSA 9.2325[4]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Juris Kaps,* Prosecuting Attorney, and *J. Ronald Kaplansky,* Assistant Attorney General, for the people.

*Sluiter, Agents, Cardinal, Van Gessel, Winther & Carlson* (by *Gaylor L. Cardinal*), for the defendant on appeal.

Before: SAWYER, P.J., and MURPHY and W. G. SCHMA,* JJ.

MURPHY, J. A jury convicted defendant of involuntary manslaughter, MCL 750.321; MSA 28.553, and operating a motor vehicle while under the influence of a controlled substance and thereby causing a death (OUI causing death), MCL 257.625(4); MSA 9.2325(4). The trial court sentenced him to imprisonment for ten to fifteen years for each conviction and ordered the sentences to run concurrently. Defendant appeals as of right. We affirm.

Defendant's convictions are the result of an accident that occurred on April 24, 1993, in which Theron Swiggers was hit and killed by an automo-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

bile. On that date, defendant's brother, Kurt Price, and friend, Andrew Griffith, were visiting defendant at his residence. Kurt and Griffith testified that defendant was not making sense and was "hyper" and fidgety. According to the men, defendant argued with his girl friend on the telephone, slammed down the telephone, and ran outside saying that the "thunderbirds" were coming. Griffith's girl friend's gray 1986 Pontiac Grand Am was parked in the driveway. Defendant got into the vehicle and started it. Despite Kurt's and Griffith's attempts to stop defendant from driving, defendant locked the car doors and sped from the driveway. Kurt saw the Grand Am veer to the right and go off the pavement. He then heard a thud and saw a person bounce off the front of the Grand Am and land off the road near some trees. The victim was Theron Swiggers. Swiggers died later at a hospital of a closed head injury. The pathologist who performed an autopsy testified that Swiggers' injuries were consistent with injuries that would have been sustained by a person who had been struck by an automobile.

After hitting Swiggers, defendant continued driving and was involved in a second accident a mile to a mile and a half from where Swiggers was found. Sergeant Gerald Kerns of the Michigan State Police witnessed the second accident. Sergeant Kerns testified that he saw defendant speed across a railroad crossing at approximately seventy to seventy-five miles an hour, rear-end another car without braking, and roll over in his car.

There were tire tracks and small pieces of glass in the area where Swiggers was struck. Defendant's vehicle had extensive front-end damage and the windshield was smashed on the passenger side of the vehicle. The passenger side window was broken. In addition, there was human hair, blood,

and a cigarette butt embedded in the smashed windshield, and an earpiece to a pair of glasses was found on the edge of the windshield. Human hair was also found in a metal clip used to hold trim behind the right front tire. There was a fabric impression or rubber mark on the hood of the car that appeared to be caused by a shoe. The human hair found in the trim clip was similar to a known hair sample taken from Swiggers.

When the police interviewed defendant in the hospital 2 to 2½ hours after the accidents, defendant appeared to be under the influence of a drug. According to Kurt, defendant had been high for the four days preceding the accident and had ingested methamphetamine on the day of the accident. A sample of defendant's blood was drawn at the hospital. Defendant's blood tested positive for the presence of methamphetamine.

I

Defendant argues that his convictions of and punishments for both involuntary manslaughter and OUI causing death constitute double jeopardy in violation of the United States and Michigan Constitutions, US Const, Am V; Const 1963, art 1, § 15. One of the protections of the Double Jeopardy Clauses of the United States and Michigan Constitutions is to prohibit the state from imposing multiple punishments for the same offense. *North Carolina v Pearce,* 395 US 711, 717-719; 89 S Ct 2072; 23 L Ed 2d 656 (1969); *People v Sturgis,* 427 Mich 392, 399; 397 NW2d 783 (1986); *People v Crawford,* 187 Mich App 344, 347; 467 NW2d 818 (1991). Defendant contends that his convictions and punishments for both involuntary manslaughter and OUI causing death violate this prohibition against multiple punishments for the same offense. We disagree.

This Court reviews de novo questions of law, including double jeopardy issues. *People v White,* 212 Mich App 298, 304-305; 536 NW2d 876 (1995).

The constitutional protection against multiple punishment for the same offense is a restriction on a court's ability to impose punishment in excess of that intended by the Legislature. *Sturgis, supra,* 400; *Crawford, supra,* 347. Because the Legislature has the sole power to define crime and fix punishment, the Double Jeopardy Clause is not a limitation on the Legislature's power to establish punishment. *Sturgis, supra,* 400. Accordingly, even if the crimes are the same, this Court's inquiry is at an end, as it pertains to a double jeopardy challenge based on multiple punishment, if it is evident that the Legislature intended to authorize cumulative punishments. *Id.* Our examination of the scope of double jeopardy protection against multiple punishment for the same offense is restricted to a determination of legislative intent. *Id.*

In determining legislative intent, a court must identify the type of harm the Legislature was intending to prevent. *People v Harding,* 443 Mich 693, 709; 506 NW2d 482 (1993). Statutes prohibiting conduct that violates distinct societal norms generally can be viewed as separate and as permitting multiple punishments. *People v Robideau,* 419 Mich 458, 487; 355 NW2d 592 (1984).

The manslaughter statute provides:

> Any person who shall commit the crime of manslaughter shall be guilty of a felony punishable by imprisonment in the state prison, not more than fifteen [15] years or by fine of not more than seven thousand five hundred [7,500] dollars, or both, at the discretion of the court. [MCL 750.321; MSA 28.553.]

The oui causing death statute provides:

A person, whether licensed or not, who operates a motor vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state, in violation of subsection (1) or (3), and by the operation of that motor vehicle causes the death of another person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not less than $2,500.00 or more than $10,000.00, or both. [MCL 257.625(4); MSA 9.2325(4).]

MCL 257.625(1); MSA 9.2325(1) provides that a person shall not operate a vehicle if the person is under the influence of intoxicating liquor, a controlled substance, or a combination thereof, or if the person has an alcohol content of 0.10 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine. MCL 257.625(3); MSA 9.2325(3) provides that a person shall not operate a vehicle if "the person's ability to operate the vehicle is visibly impaired" because of the consumption of intoxicating liquor, a controlled substance, or a combination thereof.

We conclude that the two statutes are aimed at prohibiting conduct affecting distinct societal norms. The offense of involuntary manslaughter, which is contained in the Penal Code, requires a showing that the defendant acted in a grossly negligent, wanton, or reckless manner that caused the death of another. *People v Moseler,* 202 Mich App 296, 298; 508 NW2d 192 (1993). Thus, the offense can be characterized as one focusing on punishing grossly negligent conduct. In contrast, the OUI causing death statute, which is a provision of the Vehicle Code, is a strict liability offense that focuses on swiftly and surely punishing those who operate motor vehicles while under the influence of alcohol or a controlled substance. In *People v*

*Lardie,* 207 Mich App 615, 619-620; 525 NW2d 504 (1994), a panel of this Court stated:

> The legislative analysis of the house bill enacted as the OUIL causing death statute further demonstrates the Legislature's objective in enacting the statute. A reading of the analysis evidences a legislative belief that "swift and sure" sanctions are necessary to combat the social acceptance associated with drinking and driving, and to dispel the belief that the drinking driver will not be caught and punished.

Although the legislative analysis focused primarily on drinking and driving, the reasoning is equally applicable to situations where a person operates a motor vehicle while under the influence of a controlled substance. The fact that the statutes prohibit conduct that violates distinct societal norms is evidence that the Legislature intended to permit multiple punishments. *Robideau, supra,* 487.

A further source of legislative intent can be found in the amount of punishment expressly authorized by the Legislature. *Id.; Crawford, supra,* 351. We find it significant that the statutes do not involve a hierarchy of offenses or a situation where one statute incorporates most of the elements of a base statute and then increases the penalty on the basis of the presence of aggravating conduct. See *Robideau, supra,* 487-488. Accordingly, we conclude that the penalty provisions of the statutes evidence a legislative intent to authorize punishment for both offenses.

Furthermore, analyzing the offenses under the federal *Blockburger* test, *Blockburger v United States,* 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932), also supports our conclusion that the Legislature intended to permit multiple punishments for involuntary manslaughter and OUI causing

death. Although our Supreme Court has rejected the "wooden application" of the *Blockburger* test in favor of more flexible and traditional means of determining the intent of the Legislature, the Supreme Court has approved of using the *Blockburger,* or same-elements test, as a tool to determine legislative intent. *Harding, supra,* 712-713; *Sturgis, supra,* 409. " '[B]y asking whether two separate statutes each include an element the other does not, a court is really asking whether the legislature manifested an intention to serve two different interests in enacting the two statutes.' " *Sturgis, supra,* 409, quoting *Whalen v United States,* 445 US 684, 714; 100 S Ct 1432; 63 L Ed 2d 715 (1980) (Rehnquist, J., dissenting).

Under the *Blockburger* test, the inquiry is whether each offense contains an element not contained in the other. *United States v Dixon,* 509 US —; 113 S Ct 2849, 2856; 125 L Ed 2d 556, 568 (1993). If they do not, they are the same offense and double jeopardy bars punishment for both. *Id.* However, if each offense contains an element not in the other, they are not the same offense, and double jeopardy does not bar multiple punishment.

Here, each offense contains an element not in the other. Involuntary manslaughter contains the element of gross negligence, while OUI causing death is a strict liability offense that does not require proof of gross negligence. Furthermore, OUI causing death requires proof that the defendant was operating a motor vehicle on a highway or other place open to the public or generally accessible to motor vehicles while under the influence of liquor, a controlled substance, or a combination thereof, or with an alcohol content of 0.10 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine. Involuntary manslaughter has no such require-

ments. The fact that the offenses each require proof of an element that the other does not is further evidence that the Legislature intended to serve two different interests in enacting each statute and to permit the imposition of separate punishments for both involuntary manslaughter and OUI causing death.

Defendant's convictions and punishments for involuntary manslaughter and OUI causing death do not violate double jeopardy.

II

We now address defendant's remaining arguments.

Defendant argues that the trial court made numerous erroneous evidentiary rulings that deprived him of a fair trial. The decision to admit or exclude evidence is within the sole discretion of the trial court. *People v Bahoda,* 448 Mich 261, 289-290; 531 NW2d 659 (1995). We reject defendant's contention that the trial court abused its discretion in making certain evidentiary rulings. In any event, evidentiary rulings are subject to a harmless-error analysis. *People v Travis,* 443 Mich 668, 686; 505 NW2d 563 (1993). We conclude that even if an error occurred, the error was harmless because it did not affect a substantial right of defendant and did not result in a miscarriage of justice. MRE 103(a); MCL 769.26; MSA 28.1096.

Defendant also argues that the prosecutor improperly stated during closing argument that defendant was driving like a "total idiot." Defendant failed to object to the prosecutor's statement that defendant was driving like a "total idiot." Therefore, appellate review is precluded unless a curative instruction could not have eliminated the prejudicial effect or the failure to consider the

issue would result in a miscarriage of justice. *People v Stanaway,* 446 Mich 643, 687; 521 NW2d 557 (1994). We conclude that a curative instruction would have eliminated any possible prejudicial effect that may have resulted from the prosecutor's statement and that our failure to review the issue will not result in a miscarriage of justice.

Defendant next argues that MCL 257.625(4); MSA 9.2325(4) is unconstitutional because it contains no intent requirement. Defendant's argument was rejected in *Lardie, supra,* where a panel of this Court held that MCL 257.625(4); MSA 9.2325(4) is a strict liability offense and that the statute is not unconstitutional in not requiring proof of intent for conviction.

Defendant further argues that he was denied effective assistance of counsel. In *People v Pickens,* 446 Mich 298; 521 NW2d 797 (1994), our Supreme Court adopted the federal standard for determining whether a defendant has been denied effective assistance of counsel as set forth in *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish that the defendant's right to effective assistance of counsel was so undermined that it justifies reversal of an otherwise valid conviction, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that the representation so prejudiced the defendant as to deprive him of a fair trial. *Pickens, supra,* 302-303. Because defendant did not move for a *Ginther* hearing,[1] or a new trial, our review is limited to mistakes apparent on the record. *People v Hurst,* 205 Mich App 634, 641; 517 NW2d 858 (1994). We

---

[1] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973). Defendant argues that we should remand for a *Ginther* hearing. However, we decline to do so because defendant failed to bring a timely motion for remand pursuant to MCR 7.211(C)(1).

have reviewed the record and conclude that defendant received effective assistance of counsel.

Finally, defendant argues that his sentences are disproportionate. *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990). Defendant's ten- to fifteen-year sentence for the involuntary manslaughter conviction is within the minimum guidelines range of four to ten years and is therefore presumptively proportionate. *People v Broden,* 428 Mich 343, 354-. 355; 408 NW2d 789 (1987). We have reviewed the record and conclude that defendant has failed to overcome the presumption of proportionality. We also reject defendant's argument that his ten- to fifteen-year sentence for his OUI causing death conviction is disproportionate. The sentencing guidelines do not apply to the offense of OUI causing death. After reviewing the record, we find that defendant's ten- to fifteen-year sentence for his conviction of OUI causing death is proportionate to the circumstances surrounding the offense and the offender. *Milbourn, supra,* 636. Defendant's argument that the trial court improperly considered his driving record at sentencing is not preserved because it was not raised in his statement of questions involved on appeal as required by MCR 7.212(C)(5).

Affirmed.