*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

TIMMY DEWAYNE TAYLOR,

      Defendant-Appellant.

UNPUBLISHED
February 6, 2020

No. 345361
Wayne Circuit Court
LC No. 16-004083-01-FH

Before: RIORDAN, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] an order denying his renewed motion to withdraw his guilty plea. Defendant was charged with, and pleaded guilty to, third-degree criminal sexual conduct, (CSC-III), MCL 750.520d(1)(b) (force or coercion), and was sentenced to 7 to 15 years of imprisonment in accordance with his *Cobbs*[2] evaluation. We affirm.

## I. FACTS

In 2002, the victim alleged, defendant raped the victim in the front seat of his parked car down the street from the victim's home. Eleven years later, as a result of efforts made by the Wayne County Prosecutor's Office to test backlogged rape kits, the victim's rape kit was tested and the results showed that defendant's DNA matched the sperm fraction of the victim's vaginal swab sample and the presence of different male DNA in the epithelial fraction of the same sample.[3]

---

[1] *People v Taylor*, unpublished order of the Court of Appeals, entered October 4, 2018 (Docket No. 345161).

[2] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

[3] Generally, in sexual assault prosecutions, sperm cells are isolated from other cells in a mixed sample by a process called "differential distraction." Jones, Evidence § 60:34 (7th ed). The sperm cells isolated from the mixed sample are often referred to as the "sperm fraction" and the non-sperm cells are called the "epithelial fraction." *Id*.; Forensic DNA Evidence: Science and the Law

The victim was unable to identify defendant in a photographic line up. However, based on the DNA evidence, defendant was arrested, and his case was set for trial.

Because defendant was a habitual third offender, under MCL 769.11, he faced a maximum of 30 years of imprisonment, rather than a maximum of 15 years of imprisonment as provided by MCL 750.520d(1)(b). Defendant declined the initial *Cobbs* agreement, which would have allowed him to plead guilty to CSC-III in exchange for a sentence of 7 ½ to 15 years of imprisonment, without consideration of his third habitual offender status, MCL 769.11. However, later, under an alternative *Cobbs* agreement, defendant pleaded guilty to CSC-III and received a sentence of 7 to 15 years of imprisonment.

After defendant pleaded guilty, but before his sentencing hearing, he retained new counsel and filed a motion to withdraw his guilty plea under MCR 6.310(B)(1), citing the interest of justice exception. Defendant claimed he pleaded guilty involuntarily, that the prosecution would not be prejudiced by his guilty plea withdrawal, and that he was actually innocent. The trial court denied defendant's motion, and sentenced him in accordance with the *Cobb*'s agreement.

Defendant filed a motion for reconsideration and renewed motion to withdraw his guilty plea, and again argued that he was entitled to withdraw his plea under MCR 6.310(C)(4), in the interest of justice, asserting he did not knowingly, intelligently, and voluntarily plead guilty, and that the prosecution would not be substantially prejudiced by his guilty plea withdrawal. Defendant also claimed ineffective assistance of counsel because his trial counsel was unaware of the existence of an unidentified second male DNA donor, which was exculpatory evidence. Additionally, defendant also claimed innocence, duress, stress, and coercion to support the withdrawal of his plea. The circuit court denied defendant's motion for reconsideration on the ground that it was filed untimely, and denied defendant's renewed motion to withdraw his guilty plea because the existence of the unidentified second male donor DNA was not a defense and was irrelevant.

On appeal, defendant argues that the trial court wrongly denied his motions to withdraw his guilty plea. Defendant contends that the prosecutor would not be substantially prejudiced by the withdrawal of his plea, that permitting him to withdraw his plea is consistent with the interest of justice, and that his guilty plea was involuntary because of the ineffective assistance of counsel. MCR 6.310(B)(1). Defendant also argues error in the plea proceeding under MCR 6.310(C)(4).

## II. STANDARD OF REVIEW

We review for abuse of discretion a trial court's ruling on a motion to withdraw a plea. *People v Brinkey*, 327 Mich App 94, 97; 932 NW2d 232 (2019) (citation omitted). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Id*. (citation omitted). An ineffective assistance of counsel claim is a mixed question of fact and constitutional law. *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92

---

§ 3:4; Sexual Assault Evidence Samples; MacKnight, *The Polymerase Chain Reaction (Pcr): The Second Generation Of DNA Analysis Methods Takes The Stand*, 20 Santa Clara Computer & High Tech LJ 95, 128 (2003).

(2010). Constitutional questions are reviewed de novo, while findings of fact are reviewed for clear error. *Id*. Because a *Ginther* hearing has not been held, review by this Court is limited to mistakes apparent on the record. *People v Price*, 214 Mich App 538, 547; 543 NW2d 49 (1995).

## III. ANALYSIS

The trial court did not abuse its discretion by denying defendant's motion to withdraw his guilty plea, or renewed motion to withdraw his guilty plea. Nor was there any discernible error in the plea-taking procedure.

"There is no absolute right to withdraw a guilty plea once the trial court has accepted it." *People v Pointer-Bey*, 321 Mich App 609, 615; 909 NW2d 523 (2017) (citation and quotation marks omitted). Under MCR 6.310(B), a plea may be withdrawn before sentencing "on the defendant's motion or with the defendant's consent only in the interest of justice" and only if withdrawal would not substantially prejudice the prosecutor. Withdrawal of a plea is in the interest of justice when a defendant is able to provide "a fair and just reason" for the withdrawal. *People v Fonville*, 291 Mich App 363, 378; 804 NW2d 878 (2011). "Fair and just reasons include reasons like a claim of actual innocence or a valid defense to the charge," but do not include dissatisfaction with the sentence or incorrect advice from defense counsel. *Id*. The motion to withdraw must include support for the defendant's claim, and cannot solely be premised on a postconviction assertion by defendant. *People v Patmore*, 264 Mich App 139, 151; 693 NW2d 385 (2004). MCR 6.310(C)(4) permits a defendant to withdraw his plea under circumstances where the defendant demonstrates "a defect in the plea-taking process." *People v Brown*, 492 Mich 684, 693; 822 NW2d 208 (2012).

Before accepting defendant's plea, the trial court placed him under oath and the following exchange took place:

*The Court*: We've taken some time here, but I understand Mr. Taylor, uh, has now agreed to a accept a revised *Cobbs* rendered by Judge Kenny a little earlier this morning, um, to seven years to 15 years on a plea of guilty to criminal sexual conduct in the third degree. Is that your understanding–

[*Defense counsel*]: Yes, your honor.

\* \* \*

*The Court*: Mr. Taylor, is this what you wanna do?

*The Defendant*: Yes.

*The Court*: All right. Raise your right hand. Do you solemnly swear or affirm to tell the truth?

*The Defendant*: Yes.

\* \* \*

*The Court*: The People [a]re actually not withdrawing the habitual notice but Judge Kenny has given you a sentencing evaluation of seven to 15 years which is at least with the, uh, the maximum, um, in the exercise of his discretion is substantially less than the potential maximum in this case. But in any event, that's his evaluation and you agree to accept it, right?

*The Defendant*: Yes.

*The Court*: Okay. You understand, too, that you're not only giving up your right to a trial by accepting this proposal, you're giving up a number of other important rights, and they're all listed under the notice of acceptance portion of the plea form that I'm holding up in my left hand. Is that your signature on the form?

*The Defendant*: Yes. Can I read it at the bottom?

*The Court*: And did you, you–and did you go over all those rights with your lawyer and understand all of them?

*The Defendant*: I didn't read the bottom part. I didn't.

\* \* \*

[*Defense counsel*]: I've gone over that.

*The Defendant*: Yeah. That–yeah, that part. I'm talking about the bottom. You said did I read that. Just I didn't read that.

*The Court*: Oh, no. That's what I'm talking about–

*The Defendant*: Oh, okay.

*The Court*:–those rights. You went over those rights with [*defense counsel*] and understood them?

*The Defendant*: Yes.

*The Court*: [ ] has anybody promised you anything else or threatened you or twisted your arm in any way to get you to give up your rights and pled [sic] guilty?

*The Defendant*: No.

*The Court*: Are you doing this freely and voluntarily?

*The Defendant*: Yes.

\* \* \*

*The Court*: What did you do back on [the date in question] with [the victim]

-4-

that makes you believe you committed this crime?  What did you do?

> *The Defendant*: Um, sexually assaulted her in the car.

> *The Court*: All right.  And what did that assault involve?

> *The Defendant*: Um, penetration.

> *The Court*: Uh, penis to genital penetration?

> *The Defendant*: Yes.

> *The Court*: And you–did you do that by force or coercion?

> *The Defendant*: Yes.

> \* \* \*

> [*Prosecutor*]: Uh, I believe that that–That was without [the victim]'s consent; is that correct, sir?

> *The Defendant*: Yes.

> \* \* \*

> *The Court*: [ ] We'll accept Mr. Taylor's plea and we'll schedule a sentencing date two weeks from today.

Thus, defendant admitted to sexually penetrating the victim by force or coercion and without her consent, and he affirmatively averred that his guilty plea was voluntary.  "[A] voluntary plea of guilty stands as evidence of guilt[.]"  *People v Taylor*, 383 Mich 338, 361; 175 NW2d 715 (1970).

Defendant argues that a letter purportedly written by the victim and sent to the trial court is evidence of his actual innocence.[4]  However, defendant conceded in his renewed motion to withdraw his guilty plea, and on appeal, that the letter was not authentic, and therefore, it patently fails to support defendant's claim.   As further proof of his innocence, defendant points to the victim's inability to identify him as the perpetrator.  The victim identified the perpetrator as "Tim," but had no further information regarding his identity.  However, "Tim" is a derivation of defendant's first name, and defendant's DNA matched the sperm fraction from the rape kit.  Defendant's claim that the victim identified a different perpetrator, and that he had an alibi defense is unsupported by the record.  *People v Thew*, 201 Mich App 78, 96; 506 NW2d 547 (1993) ("[T]he

---

[4] The letter included the following statement: "I've told the prosecutor several times that the defendant is not the man that hurt me and I [sic] writing you and hoping that you would listen to me."  Although the signature section of the letter indicated the victim's name and an address, the letter was not signed.  The prosecution investigated the letter and concluded that the letter was fraudulent, and the victim denied writing the letter.

issue of innocence is whether defendant is innocent of the offense of which he pleaded guilty. In other words, the issue is not whether the trial court believes him but whether defendant has a valid defense to the charge[.]"). In sum, defendant asserts that he is innocent but fails to offer any proof.

Defendant next argues that his plea was involuntary because of stress, duress, coercion, and exhaustion due to the suddenness of his plea-taking process. However, the trial court informed defendant at his pretrial conference that his trial was scheduled to take place in three months, without exception. Defendant initially rejected his *Cobbs* agreement and decided to proceed to trial, but changed his mind and pleaded guilty after a more favorable *Cobbs* agreement was presented. This demonstrates that defendant was aware that he had the option to proceed to trial, and had time to consider and negotiate his position.

Defendant further argues that his plea was involuntary, because of the ineffective assistance of his trial counsel—specifically, he asserts that his trial counsel failed to fully investigate the second male DNA identified in the epithelial fraction. A defendant can satisfy the interest of justice requirement of MCR 6.310(B)(1) by showing "ineffective assistance of counsel combined with a meritorious defense." *People v Gomer*, 206 Mich App 55, 58; 520 NW2d 360 (1994) (citation omitted). To prevail on a claim of ineffective assistance of counsel, in the context of the plea-bargaining process, a defendant must show "(1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) citing *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The first prong requires a defendant to "overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Ackley*, 497 Mich 381, 388; 870 NW2d 858 (2015).

Defense counsel hired a forensic laboratory to conduct an independent DNA analysis, and considered whether it would be in defendant's interest to admit the results into evidence. The report indicated a second male's DNA in the epithelial fraction of the victim's vaginal swab sample, but it also confirmed that defendant's DNA matched the sperm fraction of the sample. Defense counsel's decision not to conduct any further investigation into the second male DNA might have been made in an effort to not present or highlight evidence which proved that the sperm fraction belonged to defendant.[5] Thus, defendant fails to "overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id*. at 388. Moreover, given the lack of exculpatory value, defendant cannot show that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," or that the "evidence likely would have changed the outcome of [his] trial." *Lee v United States*, ___ US ___, ___; 137 S Ct 1958, 1965; 198 L Ed 2d 476 (2017).

## IV. CONCLUSION

Accordingly, the trial court did not abuse its discretion when it denied defendant's motions

---

[5] The evidence of the second male donor likely would have been inadmissible under the rape-shield statute, MCL 750.520j.

withdraw his guilty plea under MCR 6.310(B)(1)[6] and MCR 6.310(C)(4).  Affirmed.

/s/ Michael J. Riordan
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens

[6] Because defendant has not established "a fair and just reason for withdrawal of the plea," under MCR 6.310(B), it is unnecessary to determine whether the prosecution would experience substantial prejudice from the plea withdrawal.