PEOPLE v PEERENBOOM

Docket No. 191208. Submitted May 13, 1997, at Marquette. Decided June 13, 1997, at 9:15 A.M. Leave to appeal sought.

Darlene M. Peerenboom was convicted by a jury in the Dickinson Circuit Court, Francis D. Brouillette, J, of two counts of attempted murder and one count of placing explosives with intent to destroy but without resulting damage and was sentenced to concurrent terms of imprisonment of eight to fifteen years for the attempted murder conviction and six to fifteen years for the explosives conviction. The defendant appealed.

The Court of Appeals *held*:

1. The trial court did not err in refusing to suppress evidence of statements the defendant made in three interviews by the police while the defendant was in a hospital for treatment of injuries caused by the bomb for whose placement the defendant was convicted. Warnings pursuant to *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), were not required before any of the interviews because the defendant had not yet been arrested and formal restraints had not yet been placed on her freedom of movement.

2. The defendant's statements were voluntary. Under the totality of all the surrounding circumstances, the statements were the product of an essentially free and unconstrained choice by the defendant, her will was not overborne, and her capacity for self-determination was not critically impaired.

3. The convictions of attempted murder and placing explosives with intent to destroy but without resulting damage do not violate double jeopardy protections against multiple punishments. The attempted murder statute and the explosives statute indicate legislative intent to allow convictions under both statutes where appropriate. The statutes prohibit conduct violative of distinct social norms, authorize greatly differing levels of punishment, and are not hierarchical or cumulative. Also, the elements of the offenses differ greatly.

4. The defendant's challenge of the scoring of an offense variable of the sentencing guidelines cannot be addressed on appeal in the

absence of a factual predicate that is wholly unsupported, a factual predicate that is materially false, and a disproportionate sentence. Affirmed.

1. CRIMINAL LAW — MIRANDA WARNINGS — POLICE CUSTODY

Warnings pursuant to *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), need be given only when a person is in police custody, meaning that the person has been formally arrested or subjected to a restraint on freedom of movement of the degree associated with formal arrest.

2. CRIMINAL LAW — CONFESSIONS — VOLUNTARINESS.

The voluntariness of a confession is determined by considering the totality of all the surrounding circumstances and deciding whether the confession is the product of an essentially free and unconstrained choice by its maker or whether the accused's will has been overborne and the capacity for self-determination critically impaired.

3. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — MULTIPLE PUNISHMENTS.

A court in determining whether the Legislature intended to allow convictions and punishments under two statutes for the same conduct looks to whether each statute prohibits conduct violative of a distinct social norm, the amount of punishment authorized by each statute, whether the statutes are hierarchical or cumulative, and the elements of each offense.

4. SENTENCES — SENTENCING GUIDELINES — SCORING — APPEAL.

An application of the sentencing guidelines states a cognizable claim on appeal only where a factual predicate is wholly unsupported, a factual predicate is materially false, and the sentence is disproportionate.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Jay S. Finch*, Prosecuting Attorney, and *Jonathan C. Pierce*, Assistant Attorney General, for the people.

State Appellate Defender (by *Peter Jon Van Hoek*), for the defendant on appeal.

Before: O'CONNELL, P.J., and SAWYER and MARKMAN, JJ.

PER CURIAM. Defendant was convicted by jury of two counts of attempted murder, MCL 750.91; MSA 28.286, and one count of placing explosives with intent to destroy but without resulting damage, MCL 750.205; MSA 28.402. She was sentenced to concurrent terms of eight to fifteen years' imprisonment on each attempted murder conviction and six to fifteen years on the explosives conviction. Defendant appeals as of right. We affirm.

The instant convictions were based on defendant's involvement in placing a bomb outside the home of Kim Clifford and Susan Peronto with the intent of killing them. When the bomb did not detonate, defendant and a teenage boy retrieved the bomb. The bomb exploded in a car; both defendant and the boy were severely injured. Defendant lost her hands as a result of the explosion.

Defendant first argues that the trial court erred in refusing to suppress evidence of statements that she made to police officers during three interviews in her hospital room after the incident. She asserts that suppression was required because the officers did not provide defendant with *Miranda*[1] warnings before any of the interviews and because the statements were involuntary. We disagree. Defendant had not been arrested at the time of these statements. An officer's obligation to give *Miranda* warnings to a person attaches only when the person is in custody, meaning that the person has been formally arrested or subjected to a restraint on freedom of movement of the degree associated with a formal arrest. *Stansbury v California*, 511 US 318, 322; 114 S Ct 1526; 128

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

L Ed 2d 293 (1994). "It is now axiomatic that *Miranda* warnings need only be given in cases involving custodial interrogations." *People v Anderson*, 209 Mich App 527, 532; 531 NW2d 780 (1995). Thus, the trial court properly refused to suppress the statements on the basis of the officers' failure to give *Miranda* warnings because defendant had not been arrested at the time of the interviews and no formal restraint had been placed on her freedom of movement.

With regard to the voluntariness of defendant's statements to the police officers, we examine the entire record and make an independent determination of voluntariness. However, we also defer to the trial court's superior ability to view the evidence and witnesses and will not disturb its factual findings unless they are clearly erroneous. *People v Krause*, 206 Mich App 421, 423; 522 NW2d 667 (1994). Use of an involuntary statement in a criminal trial violates due process. *People v Cipriano*, 431 Mich 315, 331; 429 NW2d 781 (1988). The test of voluntariness is whether "considering the totality of all the surrounding circumstances, the confession is 'the product of an essentially free and unconstrained choice by its maker,' or whether the accused's 'will has been overborne and his capacity for self-determination critically impaired.'" *Id.* at 333-334 (citations omitted).

Several factors that should be considered by the trial court in evaluating the voluntariness of a statement were enumerated in *Cipriano, supra* at 334. We do not find the trial court's conclusions regarding those factors to be clearly erroneous in any way adverse to defendant. On the basis of testimony from a treating physician, the trial court reasonably found

that medicine administered to defendant did not reduce her willpower or impair her ability to choose to remain silent. Also, the length of questioning during each of the interviews was brief. Transcripts of tape recordings of the interviews indicate that defendant was generally able to respond intelligently to questioning. In fact, when asked if she knew who made the bomb, defendant replied affirmatively but said that she was "not going to say," which tends to undercut her claim that she believed she had to talk to the police officers. Also, defendant admitted that she lied to the officers in order to protect her son by telling them that she personally placed the bomb. That she had the presence of mind to lie weighs strongly in favor of finding that her statements were the product of her own free and unconstrained will, as opposed to having resulted from an impairment of her self-determination. *Cipriano, supra* at 331. In light of the trial court's reasonable findings and our additional observations, we conclude that the statements at issue were voluntary.

Defendant next argues that her conviction of two counts of attempted murder under MCL 750.91; MSA 28.286, and one count of placing explosives with intent to destroy but without resulting damage under MCL 750.205; MSA 28.402, violated her constitutional protection against double jeopardy. Although defendant did not preserve this issue below, we will consider it, given that it is a constitutional issue. *People v Zinn*, 217 Mich App 340, 344; 551 NW2d 704 (1996). We review double jeopardy issues de novo. *People v Price*, 214 Mich App 538, 542; 543 NW2d 49 (1995). The purpose of the double jeopardy protection against multiple punishment is to protect the defend-

ant's interest in not enduring more punishment than intended by the Legislature. *People v Rivera*, 216 Mich App 648, 650; 550 NW2d 593 (1996). Defendant argues that the Legislature would not have intended to allow convictions under both the attempted murder and explosives statutes based on the same criminal transaction because both statutes serve the same social goal of protecting life. When determining legislative intent in this context, we look to whether each statute prohibits conduct violative of a distinct social norm, the amount of punishment authorized by each statute, whether the statutes are hierarchical or cumulative, and the elements of each offense. *Id.* at 650-651.

We conclude that the attempted murder and explosives statutes protect distinct social norms. By its plain language, the explosives statute, MCL 750.205; MSA 28.402, does not require any intent to harm, let alone kill, a person, but only an intent to destroy, throw down, or injure specified types of property. Accordingly, the explosives statute is aimed at protecting people from being killed or harmed as an unintended or intended effect of placing an explosive. The attempted murder statute, however, protects only against intentional killing. *People v Graham*, 219 Mich App 707, 711; 558 NW2d 2 (1996) (conviction of attempted murder requires showing that the defendant intended to bring about a death and may not be based on a defendant's negligent or reckless acts). Also, the explosives statute protects against a threat to "human life or safety." In construing a statute, a construction that renders part of the statute surplusage or nugatory should be avoided. *Tiger Stadium Fan Club, Inc v Governor*, 217 Mich App 439, 457; 553

NW2d 7 (1996). The reference to human safety means that the explosives statute, unlike the attempted murder statute, protects the distinct social norm of preventing non-fatal harm to a person. Cf. *Rivera, supra* at 650-651 (offenses of assault with intent to murder and discharge of a firearm from a vehicle with intent to commit harm protect markedly different social norms). Also, the two statutes authorize greatly differing levels of punishment—attempted murder is punishable by imprisonment for life or any term of years, while the maximum sentence for placing an explosive is fifteen years. The statutes are also located in different chapters of the Penal Code, meaning that they are not hierarchical or cumulative. *Id.* at 651. Finally, the elements of the offenses differ greatly inasmuch as the explosives offense does not require an intent to kill and attempted murder does not require the use of an explosive device. On the basis of these four factors, we conclude that defendant's convictions under both statutes did not violate double jeopardy protections against multiple punishments. *Id.*

Finally, defendant argues that the trial court erred in its scoring of Offense Variable 7.[2] However, after the filing of the parties' briefs, the Michigan Supreme Court held that appellate relief is not available for claimed errors based on alleged misinterpretation or misapplication of the scoring guidelines. *People v Mitchell*, 454 Mich 145, 176; 560 NW2d 600 (1997). "Thus, application of the guidelines states a cognizable claim on appeal only where (1) a factual predicate

---

[2] Because attempted murder is not covered by the sentencing guidelines, the trial court directed that the guidelines be scored for assault with intent to commit murder. Neither party challenges this decision on appeal.

is wholly unsupported, (2) a factual predicate is materially false, and (3) the sentence is disproportionate." *Id.* at 177. The Court further noted that "[a]ppellate courts are not to interpret the guidelines or to score and rescore the variables for offenses and prior record to determine if they were correctly applied." *Id.* at 178. Accordingly, appellate review and relief are not available for defendant's claim that OV 7 was misscored.

Affirmed.