## PEOPLE v KULPINSKI

Docket No. 220072. Submitted September14, 2000, at Lansing. Decided
October 17, 2000, at 9:00 A.M. Leave to appeal sought.

Michael P. Kulpinski was convicted by a jury in the Calhoun Circuit
Court, Allen L. Garbrecht, J., of involuntary manslaughter, MCL
750.321; MSA 28.553, and operating a motor vehicle while under the
influence of intoxicating liquor (OUIL) causing death, MCL
257.625(4); MSA 9.2325(4). The convictions arose out of a motor
vehicle accident in which the defendant's vehicle crossed the cen-
terline of a road and struck a vehicle coming in the opposite direc-
tion, causing the death of the driver of the other vehicle. Witnesses
testified that the defendant's vehicle had been weaving erratically
before the accident and that the defendant had a strong odor of
alcohol after the accident. The defendant was transported to a hos-
pital for treatment of his injuries, and blood was drawn by an
emergency room physician for treatment purposes, the test
revealing a blood alcohol level of 0.15 percent. At the hospital, a
deputy sheriff, finding the defendant belligerent and smelling
strongly of alcohol, asked the defendant how much he had had to
drink, to which the defendant replied that he had had four beers.
On the basis of these observations, the deputy determined that the
defendant was intoxicated and ceased his questioning. The defen-
dant appealed, arguing that his convictions and sentences for invol-
untary manslaughter and OUIL causing death constitute multiple
punishments for the same offense in violation of the double jeop-
ardy provisions of the United States Constitution and the Michigan
Constitution.

The Court of Appeals held:

1. Although acknowledging that the Court of Appeals has already
addressed and rejected the double jeopardy challenge raised in this
appeal in People v Price, 214 Mich App 538 (1995), the defendant
argues that the double jeopardy analysis in Price has been under-
mined by the subsequent holding of the Supreme Court in People v
Lardie, 452 Mich 231 (1996), in which the Supreme Court rejected
the holding of the Court of Appeals in People v Lardie, 207 Mich
App 615 (1994), that OUIL causing death was a strict liability crime
and held that OUIL causing death was a general intent crime in

which the element of gross negligence is presumed. The defendant argues that, because of the holding of the Supreme Court in *Lardie*, the elements of involuntary manslaughter and OUIL causing death are identical and, accordingly, his conviction of both offenses violates the constitutional prohibitions against double jeopardy.

2. The Supreme Court in *Lardie*, while noting that the elements of involuntary manslaughter and OUIL causing death are similar, indicated that the elements are not identical because the prosecution does not have to prove gross negligence in order to prove OUIL causing death. The Supreme Court further noted that the OUIL causing death statute was not a codification of the common law, but was rather a statutory crime focused on a particular social ill, as is evidenced by the Legislature's adoption of a separate penalty rather than referring to the manslaughter statute for the penalty.

3. The Supreme Court's decision in *Lardie* that OUIL causing death is a general intent crime does not act to reject the holding in *Price* that the OUIL statute and the manslaughter statute prohibit conduct that violates distinct societal norms. Accordingly, the double jeopardy analysis in *Price* remains in force, the defendant's convictions of both involuntary manslaughter and OUIL causing death do not violate the Double Jeopardy Clause of either the United States Constitution or the Michigan Constitution, and the defendant has failed to demonstrate any plain error affecting his substantial rights by his being convicted and sentenced for both offenses.

4. Because there was no showing that the defendant was under any kind of constraint, under arrest, or a suspect in a crime at the time he was briefly questioned by the deputy sheriff at the hospital, he was not in custody, and the deputy had no duty to warn the defendant of his constitutional rights before proceeding with the brief questioning to determine the defendant's condition.

5. Because there is no basis for the defendant's assertion of police involvement in the conducting of the blood alcohol test in the hospital emergency room, and the record suggests that the blood was drawn and tested by an emergency room physician for medical purposes, the results of the blood alcohol test were properly admitted at trial.

6. Because the testimony concerning the defendant's statement to the deputy sheriff and the results of the blood alcohol test were properly admissible, and any objection to the admission of either would have been without merit, the failure of defendant's trial counsel to make those objections did not constitute ineffective assistance of counsel.

Affirmed.

CRIMINAL LAW — HOMICIDE — AUTOMOBILES — DOUBLE JEOPARDY.

> The statute that prohibits involuntary manslaughter and the statute that prohibits operating a motor vehicle while under the influence of intoxicating liquor and thereby causing death are aimed at prohibiting conduct affecting distinct societal norms, evidencing the Legislature's intent to permit punishment for both offenses; because each offense contains an element not contained in the other, they are not the same offense and double jeopardy does not bar multiple punishment for the conviction of both offenses (MCL 257.625[4], 750.321; MSA 9.2325[4], 28.553).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Susan K. Mladenoff*, Prosecuting Attorney, and *Jennifer Kay Clark*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Gail Rodwan*, Assistant Defender), for the defendant on appeal.

Before: MURPHY, P.J., and GRIFFIN and WILDER, JJ.

GRIFFIN, J. Following a jury trial, defendant was convicted of involuntary manslaughter, MCL 750.321; MSA 28.553, and operating a motor vehicle while under the influence of intoxicating liquor (OUIL) causing death, MCL 257.625(4); MSA 9.2325(4). The trial court sentenced defendant to imprisonment for five to fifteen years for each conviction, with the sentences to run concurrently. Defendant appeals as of right. We affirm.

I

Defendant's convictions stem from an automobile accident on June 27, 1997, in which defendant, while driving his pick-up truck north on M-66, crossed the centerline of the road into the southbound lane and struck and killed Helen Mason in her Subaru Legacy stationwagon. The road was dry and clear on that

date, and several witnesses to the accident consistently testified at trial that immediately before the fatal collision defendant's truck was weaving erratically into the opposing lane, as if nobody was controlling it. Following the accident, defendant was, by all accounts, belligerent, uncooperative, and confused. Witnesses noted a strong, distinct odor of alcohol emanating from defendant. Defendant was transported to a hospital for treatment of his injuries, at which time a blood test revealed that defendant's blood alcohol level was 0.15 percent.

II

On appeal, defendant first maintains his convictions and sentences for involuntary manslaughter and OUIL causing death constitute multiple punishments for the same offense in violation of the double jeopardy provisions of the United States and Michigan Constitutions, US Const, Am V;[1] Const 1963, art 1, § 15.[2] We disagree.

In order to avoid forfeiture of this unpreserved constitutional issue on appeal, defendant must show that (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Once these three requirements have been satisfied, this Court must then "exercise its discretion in deciding whether to reverse." *Id.* Reversal is warranted only when the plain, unpreserved

---

[1] US Const, Am V provides: "No person shall be . . . subject for the same offense to be twice put in jeopardy of life or limb . . . ."

[2] Const 1963, art 1, § 15 provides: "No person shall be subject for the same offense to be twice put in jeopardy . . . ."

error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence. *Id.*

A double jeopardy challenge constitutes a question of law that this Court reviews de novo on appeal. *People v Walker*, 234 Mich App 299, 302; 593 NW2d 673 (1999). The intent of the Legislature is the determining factor under the Double Jeopardy Clauses of the federal and state constitutions, and an alleged violation of this constitutional guarantee is measured by the standards set forth in *People v Denio*, 454 Mich 691, 707-708; 564 NW2d 13 (1997):

> The United States Supreme Court has repeatedly held that the test enumerated in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932), is to be used to determine legislative intent in analyzing the protection afforded by the Double Jeopardy Clause of the United States Constitution:
>
> "For over half a century we have determined whether a defendant has been punished twice for the 'same offense' by applying the rules set forth in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932). If 'the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.' *Ibid.* In subsequent applications of the test, we have often concluded that two different statutes define the 'same offense,' typically because one is a lesser included offense of the other. [*Rutledge v United States*, 517 US 292, ___; 116 S Ct 1241; 134 L Ed 2d 419, 426 (1996).]"
>
> \*          \*          \*
>
> This Court has rejected the *Blockburger* test in analyzing the Double Jeopardy Clause of the Michigan Constitution,

and instead uses traditional means to determine the intent of the Legislature, such as the subject, language, and history of the statutes. [*People v*] *Robideau*, [419 Mich 458, 486-487; 355 NW2d 592 (1984)].

Statutes prohibiting conduct that is violative of distinct societal norms can generally be viewed as separate and amenable to permitting multiple punishments. *Id.* at 708. A further source of legislative intent can be found in the amount of punishment expressly authorized by the Legislature. *Id.*

Using the above analysis, this Court has already addressed and rejected the very double jeopardy challenge now raised by defendant in the present appeal. In *People v Price*, 214 Mich App 538, 541-546; 543 NW2d 49 (1995), this Court held the defendant's convictions and multiple punishments for OUI causing death and involuntary manslaughter with a vehicle violated neither federal nor state double jeopardy protections. In so doing, the *Price* Court, *id.* at 542-543, first examined the offenses at issue,[3] noting:

The manslaughter statute provides:

"Any person who shall commit the crime of manslaughter shall be guilty of a felony punishable by imprisonment in the state prison, not more than fifteen [15] years or by fine of not more than seven thousand five hundred [7,500] dollars, or both, at the discretion of the court. [MCL 750.321; MSA 28.553.]"

The OUI causing death statute provides:

"A person, whether licensed or not, who operates a motor vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles,

---

[3] The crime of involuntary manslaughter is codified only insofar as the punishment is concerned; its definition remains rooted in common law. See, generally, CJI2d 16.12.

including an area designated for the parking of vehicles, within this state, in violation of subsection (1) or (3), and by the operation of that motor vehicle causes the death of another person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not less than $2,500.00 or more than $10,000.00, or both. [MCL 257.625(4); MSA 9.2325(4).]"

MCL 257.625(1); MSA 9.2325(1) provides that a person shall not operate a vehicle if the person is under the influence of intoxicating liquor, a controlled substance, or a combination thereof, or if the person has an alcohol content of 0.10 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine. MCL 257.625(3); MSA 9.2325(3) provides that a person shall not operate a vehicle if "the person's ability to operate the vehicle is visibly impaired" because of the consumption of intoxicating liquor, a controlled substance, or a combination thereof.

Framing the defendant's double jeopardy challenge under the Michigan Constitution in terms of legislative intent, this Court concluded:

[T]he two statutes are aimed at prohibiting conduct affecting distinct societal norms. The offense of involuntary manslaughter, which is contained in the Penal Code, requires a showing that the defendant acted in a grossly negligent, wanton, or reckless manner that caused the death of another. *People v Moseler*, 202 Mich App 296, 298; 508 NW2d 192 (1993). Thus, the offense can be characterized as one focusing on punishing grossly negligent conduct. *In contrast, the OUI causing death statute, which is a provision of the Vehicle Code, is a strict liability offense that focuses on swiftly and surely punishing those who operate motor vehicles while under the influence of alcohol or a controlled substance. In* People v Lardie, *207 Mich App 615, 619-620; 525 NW2d 504 (1994), a panel of this Court stated:*

*"The legislative analysis of the house bill enacted as the OUIL causing death statute further demonstrates the Legis-*

*lature's objective in enacting the statute. A reading of the analysis evidences a legislative belief that 'swift and sure' sanctions are necessary to combat the social acceptance associated with drinking and driving, and to dispel the belief that the drinking driver will not be caught and punished."*

Although the legislative analysis focused primarily on drinking and driving, the reasoning is equally applicable to situations where a person operates a motor vehicle while under the influence of a controlled substance. The fact that the statutes prohibit conduct that violates distinct societal norms is evidence that the Legislature intended to permit multiple punishments. . . .

A further source of legislative intent can be found in the amount of punishment expressly authorized by the Legislature. . . . We find it significant that the statutes do not involve a hierarchy of offenses or a situation where one statute incorporates most of the elements of a base statute and then increases the penalty on the basis of the presence of aggravating conduct. . . . Accordingly, we conclude that the penalty provisions of the statutes evidence a legislative intent to authorize punishment for both offenses. [*Id.* at 543-544 (emphasis added).]

The *Price* Court similarly rejected the defendant's federal double jeopardy claim:

Furthermore, analyzing the offenses under the federal *Blockburger* test . . . also supports our conclusion that the Legislature intended to permit multiple punishments for involuntary manslaughter and OUI causing death. . . .

\*      \*      \*

Here, each offense contains an element not in the other. *Involuntary manslaughter contains the element of gross negligence, while OUI causing death is a strict liability offense that does not require proof of gross negligence.* Furthermore, OUI causing death requires proof that the defendant was operating a motor vehicle on a highway or other place open to the public or generally accessible to motor

vehicles while under the influence of liquor, a controlled substance, or a combination thereof, or with an alcohol content of 0.10 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine. Involuntary manslaughter has no such requirements. The fact that the offenses each require proof of an element that the other does not is further evidence that the Legislature intended to serve two different interests in enacting each statute and to permit the imposition of separate punishments for both involuntary manslaughter and OUI causing death. [*Id.* at 544-546.]

Defendant acknowledges that *Price* seemingly governs resolution of the identical issues raised herein, but he maintains that the double jeopardy analysis in *Price* has been undermined by subsequent case law. Defendant points to the fact that in *People v Lardie*, 207 Mich App 615, 618-620; 525 NW2d 504 (1994), this Court held that OUIL causing death was a strict liability crime. As noted in the emphasized portions of the excerpts from *Price* quoted above, the *Price* Court quoted and relied on *Lardie* in this regard to distinguish the OUIL causing death statute from the involuntary manslaughter statute for double jeopardy purposes. However, on further appeal, our Supreme Court in *People v Lardie*, 452 Mich 231; 551 NW2d 656 (1996), while affirming the constitutionality of the OUIL causing death statute, overturned in part the holding of this Court in *Lardie* by concluding that the crime of OUIL causing death is not a strict liability crime, but rather is a general intent crime in which the element of gross negligence is presumed once the prosecution proves that a defendant voluntarily decided to drive knowing that he had consumed an

intoxicating liquor or a controlled substance and, therefore, knowing he could be intoxicated.[4]

Defendant's argument, in essence, is that when our Supreme Court in *Lardie* ruled the crime of OUIL caus-

---

[4] The Supreme Court in *Lardie, supra* at 249, 251, and 256, held in pertinent part:

Under the plain language of MCL 257.625(4); MSA 9.2325(4), there is no requirement that the people prove gross negligence or negligence in order to prosecute someone for causing another person's death by operating a vehicle while intoxicated. Thus, . . . the Legislature must have intended to eliminate this element as a requirement when it enacted the statute.

\*     \*     \*

In eliminating the issue of gross negligence as a question of fact for the jury, the Legislature essentially has presumed that driving while intoxicated is gross negligence as a matter of law. Once the people prove that a defendant was driving while intoxicated, the people need not prove the further point that the defendant's driving was grossly negligent.

In eliminating this requirement, the Legislature likely wished to require proof of a criminal intent for the criminal act of intoxicated driving. The presumption of gross negligence from the act itself is only reasonable if the defendant (1) *voluntarily* decided to drive and (2) drove *knowing* that he had consumed an intoxicating liquor or a controlled substance and, therefore, knowing he could be intoxicated.

\*     \*     \*

Consequently, consistent with the Legislature's decision to presume gross negligence as a matter of law and its desire to deter intoxicated driving, the Legislature must reasonably have intended that the people prove a mens rea by demonstrating that the defendant purposefully drove while intoxicated or, in other words, that he had the general intent to perform the wrongful act. Where a statute requires a "criminal mind" for some, but not all, of the elements of the crime, the statute does not impose strict liability. . . . Because the statute requires proof of a mens rea, it does not impose strict liability. Rather, we conclude that the statute requires the people to prove that a defendant, who kills someone by driving while intoxicated, acted knowingly in consuming an intoxicating liquor or a controlled substance, and acted voluntarily in deciding to drive after such consumption.

ing death is not a strict liability crime, but rather is a general intent crime to which the element of gross negligence is imputed, it undermined this Court's reasoning in *Price, supra,* to the extent that the holding of *Price* is no longer valid. Defendant argues that pursuant to the Supreme Court's decision in *Lardie,* the elements of involuntary manslaughter with a motor vehicle and OUIL causing death are now virtually identical: both crimes require that the defendant operated his motor vehicle in a grossly negligent way and that gross negligence caused an accident resulting in death. Consequently, defendant maintains "[i]t is now apparent that the social harm that both OUIL causing death and involuntary manslaughter with a motor vehicle are intended to prevent is the same: grossly negligent driving that leads to the death of another." Therefore, according to defendant, this Court should reject *Price* and hold that convictions and punishments for involuntary manslaughter with a motor vehicle and OUIL causing death, when they arise from the same automobile accident and cause a single death, violate the double jeopardy provisions of the state and federal constitutions. We disagree.

First, we note the Supreme Court's decision in *Lardie* neither expressly nor implicitly addressed the issue of double jeopardy. Instead, the constitutionality of the OUIL causing death statute was at issue. To the limited and narrow extent the *Price* Court, in a different context, concluded that OUIL causing death is a strict liability crime, it is no longer viable in light of *Lardie.* In all other respects, however, and specifically in terms of its double jeopardy analysis, we believe the *Price* holding remains intact because the characterization of OUIL causing death as a strict lia-

bility crime was not essential in determining the outcome of the double jeopardy claim. The double jeopardy analysis in *Price, supra,* focused on several indicia of legislative intent, not merely on its description of OUIL causing death as a strict liability crime, and the Supreme Court's decision in *Lardie* does not adversely affect the other bases for this Court's conclusion in *Price.* In fact, upon closer scrutiny, we find the Supreme Court's characterization in *Lardie* of OUIL causing death as a general intent crime is consistent with the holding in *Price* that the Legislature's intent was to permit the imposition of separate convictions and punishments for both involuntary manslaughter and OUIL causing death.

The Supreme Court concluded that in enacting the OUIL causing death statute, the Legislature intended to eliminate gross negligence as a question of fact for the jury. *Lardie, supra,* 452 Mich 249. Although the Court imputed a presumption of gross negligence to the crime, it did so only to avoid the absurd result of imposing penalties in those rare situations where a driver was forced to drive while intoxicated or honestly did not know he had drunk alcohol before driving. *Id.* at 251-253. The Supreme Court specifically explained that the requisite elements of the crime of OUIL causing death "are similar to those for involuntary manslaughter *except that the people would not have to prove gross negligence." Id.* at 259 (emphasis added).

Moreover, the Supreme Court concluded the OUIL causing death statute is not a codification of common law. *Id.* at 246. The Court reasoned that the statute is designed to deter motorists from driving after they have become intoxicated; the culpable act the Legisla-

ture intended to prevent is the one in which a person becomes intoxicated and then decides to drive. By contrast, the common law, as articulated in *People v Townsend*, 214 Mich 267, 273; 183 NW 177 (1921), focuses not merely on the evil of intoxicated driving, but also the vice of voluntary intoxication in and of itself. *Lardie, supra,* 452 Mich 245. Additionally, the Court noted that unlike the common law, the OUIL causing death statute mandates a threshold blood alcohol content and the Legislature created its own statutory penalty for a violation of the statute. *Id.* at 246. The Supreme Court surmised that in so doing, the Legislature declined to adopt the manslaughter penalty now codified in MCL 750.321; MSA 28.553, and "would likely have referred to the manslaughter statute for the penalty for the crime if it wished to codify the crime from the common law." *Lardie, supra,* 452 Mich 246. Significantly, the Supreme Court stated that the OUIL causing death statute does not limit the ability of the prosecution to charge an intoxicated driver with involuntary manslaughter, negligent homicide, or even murder if warranted by the facts. *Id.* at 247, n 23. Thus, we disagree with the present defendant's assessment that "[i]n many ways, OUIL causing death codifies the common law charge of involuntary manslaughter with a motor vehicle while voluntarily intoxicated."

The Supreme Court in *Lardie* also firmly established and clarified the causation element of the crime of OUIL causing death, thereby further distinguishing it from the crime of involuntary manslaughter. The Court explained, *id.* at 258, that "[i]n proving causation, the people must establish that the particular defendant's decision to drive while intoxicated

produced a change in that driver's operation of the vehicle that caused the death of the victim." The Court emphasized the significance of this requirement in several footnotes:

[46] The concurrence suggests that the statute unambiguously provides that a driver is guilty of this crime when his mere operation of the vehicle is the cause in fact of the victim's death regardless of whether his intoxication played a causal role. . . . Contrary to the concurrence's suggestion, the statute may easily support the interpretation that the driver's *intoxication*, rather than the mere operation of the vehicle, must be the cause of the victim's death.

[47] It is the *change* that such intoxication produces, and whether it caused the death, which is the focus of this element of the crime. The concurrence argues that this conclusion "rewards" the careless or unsafe driver because the people will have a more difficult time proving causation against such a driver. . . . This is misleading. *Under this particular statute, the Legislature punishes drivers when their* drunken *driving causes the death of another. However, the people may also charge a defendant with involuntary manslaughter, at the same time in charging this crime, if there is a serious question about whether the driver's careless or unsafe driving, somehow unrelated to his intoxication, was the cause of the victim's death.*

[48] . . . The concurrence claims that the victim's death is "always avoidable" because the driver could have decided not to drive at all. . . . However, this interpretation eliminates any substantial connection between the fault and the resulting death. *The Legislature seeks to prohibit intoxicated driving because of the danger that such driving poses to the safety of the community.* The concurrence would allow the statute to impose this fifteen-year penalty when that fault played no role in causing the accident, permitting the driver's fault to be merely coincidental with the victim's death.

We agree with the concurrence that "[t]he Legislature drafted the statute so that the intoxicated driver would be responsible for *all* consequences that flow from his deci-

sion to drive while intoxicated." . . . We further conclude, however, that a victim's death was one of the consequences of a driver's decision to drive while intoxicated *only* when the driver's intoxication was a cause of that death. *This is the crime that merits swift and sure punishment, not the unavoidable killing of another with a vehicle.* [*Id.* at 257-259, ns 46, 47, 48 (emphasis added and in original).]

Thus, by emphasizing the causation requirement, the Supreme Court in *Lardie* highlighted the fact that the societal norm that the OUIL causing death statute seeks to address—*intoxicated* driving—is different from the societal norm addressed by the crime of involuntary manslaughter, which conceivably encompasses a wide variety of behaviors constituting gross negligence and has no such intoxication requirement at all. Because our Supreme Court has made clear that the act of *intoxicated* driving, not "the unavoidable killing of another with a vehicle," is "the crime that merits swift and sure punishment," *id.* at 259, n 48, this foundation of the double jeopardy analysis in *Price* remains valid.

We conclude the *Price* Court's double jeopardy analysis stands independently of its now overturned conclusion that the statute contained no mens rea requirement. The fact that in *Lardie*, our Supreme Court decided OUIL causing death is a general intent crime does not change the fact that the OUIL statute and the involuntary manslaughter statute "prohibit conduct that violates distinct societal norms." *Price, supra* at 544. Thus, defendant cannot successfully argue the OUIL causing death statute's newly articulated status as a general intent, rather than strict liability, crime substantially undermines the double jeopardy analysis in *Price*, which focused on several

indicia of legislative intent, not merely its now invalid description of OUIL causing death as a strict liability crime. For the same reasons, the *Price* Court's application of the *Blockburger* test with regard to defendant's double jeopardy challenge under the federal constitution likewise remains viable. This Court's conclusion in *Price, supra* at 545, that "each offense contains an element not in the other" is unchanged by the *Lardie* decision.

In sum, the double jeopardy analysis set forth in *Price* still governs the outcome of the identical issue raised in the present case. The offenses of involuntary manslaughter and OUIL causing death protect distinct societal norms, the amount of punishment for each statute does not involve a hierarchy of offenses, and each statute requires proof of an element that the other does not. Thus, pursuant to *Price, supra,* defendant's convictions and punishments under both statutes do not violate the Double Jeopardy Clauses of the United States and Michigan Constitutions. In so concluding, we reiterate the observations of our Supreme Court in *Denio, supra* at 709:

> [I]t must be remembered that "the Legislature's authority to define a single criminal 'act' or 'offense' is not diminished by the Double Jeopardy Clause." *People v Wakeford,* 418 Mich 95, 108; 341 NW2d 68 (1983). The Legislature is free to determine what activity constitutes a criminal offense subject to criminal penalty. . . . The Double Jeopardy Clauses restrict the courts from imposing more punishment than that intended by the Legislature. . . . Thus, if the Legislature desires, it may specifically authorize penalties for what would otherwise be the "same offense." *People v Sturgis,* 427 Mich 392, 403; 397 NW2d 783 (1986). "[C]umulative punishment of the same conduct under two different statutes in a single trial does not run afoul of the

Double Jeopardy Clause in either the federal or state system."

Under the present circumstances, defendant has failed to demonstrate plain error affecting his substantial rights. *Carines, supra.*

### III

Defendant next argues an inculpatory statement he made to a police officer while in the hospital following the accident, and without the benefit of *Miranda*[5] warnings, should have been suppressed, because defendant was in custody at the time of the interview. Defendant also argues the results of the blood alcohol test administered at the hospital should have been suppressed because defendant was not advised of his right to refuse the blood test or of his right to an independent blood test. In a related argument, defendant maintains his counsel was ineffective for failing to preserve these alleged errors by objecting to admission of the evidence or by moving to suppress it at the trial court level.

As suggested by defendant's ineffective assistance of counsel argument, this issue has not been properly preserved for appellate review. In any event, we find defendant's contention in this regard to be without merit.

In *People v Peerenboom*, 224 Mich App 195, 197-198; 568 NW2d 153 (1997), this Court addressed what it means to be in "custody" for purposes of triggering *Miranda* warnings:

---

[5] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

> An officer's obligation to give *Miranda* warnings to a person attaches only when the person is in custody, meaning that the person has been formally arrested or subjected to a restraint on freedom of movement of the degree associated with a formal arrest. *Stansbury v California*, 511 US 318, 322; 114 S Ct 1526; 128 L Ed 2d 293 (1994). "It is now axiomatic that *Miranda* warnings need only be given in cases involving custodial interrogations." *People v Anderson*, 209 Mich App 527, 532; 531 NW2d 780 (1995).

See also *People v Mendez*, 225 Mich App 381, 383-384; 571 NW2d 528 (1997).

The record in the instant case indicates the deputy arrived at the hospital in uniform and identified himself to defendant. The deputy testified defendant was not in custody at the time. According to the deputy, defendant was belligerent and smelled strongly of alcohol. The deputy asked him how many beers he had, and defendant replied he had four beers before the accident. On the basis of his observations, the deputy concluded defendant was intoxicated and thus ceased talking with defendant. The deputy testified that, to his knowledge, defendant was not restrained when he talked to him.

The fact defendant may have been on a cot wearing a neck brace when the deputy spoke briefly with him does not constitute the significant type of restraint required to render him "in custody" for purposes of *Miranda* warnings. See *Peerenboom, supra* at 197-198. Likewise, the fact that the defendant was in the hospital does not automatically imply that the environment was coercive. See *id.* at 198-199. Defendant neither had been formally arrested nor had been "subjected to a restraint on freedom of movement of the degree associated with a formal arrest." *Id.* at 197. Furthermore, the deputy did not actually interrogate

defendant, because it quickly became apparent to the deputy that defendant was intoxicated, at which point the conversation was terminated. Additionally, it is of little significance that defendant was a suspect in the crime. See *Mendez, supra* at 383-384. Therefore, because defendant was not in custody or under arrest when the deputy went to see him at the hospital, the deputy was not required to read defendant his *Miranda* warnings.

We further conclude, contrary to defendant's contention, that pursuant to MCL 257.625a(6)(e); MSA 9.2325(1)(6)(e),[6] an objection to the admission of defendant's blood alcohol test results would have been meritless.[7] The testimony introduced at trial indicates that the test was done in response to a work order from an emergency room doctor and that the blood was drawn for medical purposes. There is no justification in the record for defendant's assertion that there was police involvement with the blood alcohol test. Accordingly, admission of the blood test results was appropriate. In fact, the statute makes

---

[6] MCL 257.625a(6)(e); MSA 9.2325(1)(6)(e) provides:

   If, after an accident, the driver of a vehicle involved in the accident is transported to a medical facility and a sample of the driver's blood is withdrawn at that time for medical treatment, the results of a chemical analysis of that sample are admissible in any civil or criminal proceeding to show the amount of alcohol or presence of a controlled substance or both in the person's blood at the time alleged, regardless of whether the person had been offered or had refused a chemical test. The medical facility or person performing the chemical analysis shall disclose the results of the analysis to a prosecuting attorney who requests the results for use in a criminal prosecution as provided in this subdivision. A medical facility or person disclosing information in compliance with this subsection is not civilly or criminally liable for making the disclosure.

[7] Because defendant had not been arrested at the time that the test was performed, MCL 257.625a(6)(b); MSA 9.2325(1)(6)(b) is inapplicable.

disclosure of such results mandatory, not just permissible, "regardless of whether the person had been offered or had refused a chemical test." See also *People v Perlos*, 436 Mich 305; 462 NW2d 310 (1990).

Finally, because the evidence was properly admitted, defendant's contention that his trial counsel was ineffective for not objecting to it is without merit. *People v Pickens*, 446 Mich 298, 309; 521 NW2d 797 (1994). Defense counsel is not required to raise a meritless objection. *People v Torres (On Remand)*, 222 Mich App 411, 425; 564 NW2d 149 (1997).

Affirmed.