*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MAHER MOHAMMAD GHUNAIM,

Defendant-Appellant.

UNPUBLISHED
November 17, 2022

No. 359167
Eaton Circuit Court
LC No. 21-020223-FC

Before: K. F. KELLY, P.J., and LETICA and RICK, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the circuit court's order denying his motion to suppress statements he made to police while in the hospital. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant, Maher Mohammad Ghunaim, is a Jordanian citizen whose primary language is Arabic, with English as a second language. On October 15, 2020, defendant's brother took him to McLaren Hospital in Lansing, Michigan, after an alleged suicide attempt. Defendant was subsequently transferred to Samaritan Center in Detroit two days later, and then to Ascension St. John Hospital in Detroit on October 21, 2020, after he complained of chest pains.

On October 22, 2020, defendant was interviewed by Eaton County Sheriff's Department Detective Heather Stefan and Child Protective Services worker LeeAnn Kinsey inside his hospital room at Ascension St. John Hospital. Det. Stefan was investigating an August 18, 2020 complaint of sexual abuse from defendant's stepdaughter, who identified defendant as the perpetrator. The interview between Det. Stefan and defendant was video recorded.

---

[1] *People v Ghunaim*, unpublished order of the Court of Appeals, entered May 9, 2022 (Docket No. 359167).

During the majority of the interview, Det. Stefan sat next to defendant, who was in his hospital bed. Although defendant had an intravenous tube in his arm, he was upright and alert. During the interview, defendant made numerous incriminating statements to Det. Stefan admitting his involvement in the sexual abuse. The video recording also depicts instances in which Det. Stefan closed the door to defendant's hospital room, asked an individual who was in the room when she and Kinsey arrived if the individual needed to stay, and asked another individual who later came into defendant's hospital room if that individual could return later.

Defendant was subsequently charged with one count of first-degree criminal sexual conduct, MCL 750.520b(1)(a), (2)(b) (sexual penetration by defendant over 17 against victim under 13), and one count of second-degree criminal sexual conduct, MCL 750.520c(1)(a), (2)(b) (sexual contact by defendant over 17 against victim under 13). On the basis of defendant's motion, the district court suppressed the statements made during the hospital interview but bound defendant over to circuit court for trial. In the circuit court, defendant renewed his motion to suppress, which the court denied, concluding that defendant was not in custody during the interview and that his statements were made voluntarily. This appeal followed.

## II. STANDARDS OF REVIEW

"Whether a person is in custody for purposes of the *Miranda* warnings requirement is a mixed question of law and fact that must be answered independently after a review of the record de novo." *People v Cortez*, 299 Mich App 679, 691; 832 NW2d 1 (2013). And "[w]hen reviewing a trial court's determination of the voluntariness of inculpatory statements, this Court must examine the entire record and make an independent determination, but will not disturb the trial court's factual findings absent clear error." *People v Shipley*, 256 Mich App 367, 372-373; 662 NW2d 856 (2003). "A finding is clearly erroneous if, after reviewing the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Barritt*, 325 Mich App 556, 561; 926 NW2d 811 (2018) (quotation marks and citation omitted). Lastly, "[w]e review de novo a trial court's ultimate decision on a motion to suppress." *People v Mazzie*, 326 Mich App 279, 289; 926 NW2d 359 (2018) (quotation marks and citation omitted).

## III. ANALYSIS

On appeal, defendant argues the circuit court erred when it determined that he was not in custody at the time of the questioning and when it found his statements were voluntary. We will address each in turn.

## A. CUSTODIAL INTERROGATION

First, defendant argues that the circuit court erred when it denied his motion to suppress because he was not advised of his *Miranda*[2] rights before he made the incriminating statements to Det. Stefan. Defendant claims the statements were made in the context of a custodial interrogation, thus triggering the *Miranda* requirement. We disagree.

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

The United States and Michigan Constitutions protect a criminal defendant from the right against self-incrimination. US Const, Am V; Const 1963, art 1, § 17. Under *Miranda v Arizona*, 384 US 436, 444-445; 86 S Ct 1602; 16 L Ed2d 694 (1966), "the police must warn a defendant of his or her constitutional rights if the defendant is taken into custody for interrogation." *Barritt*, 325 Mich App at 562.

Interrogation "refers to express questioning or its functional equivalent." *People v Anderson*, 209 Mich App 527, 532; 531 NW2d 780 (1995). "In other words, interrogation refers to express questioning and to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id*. at 532-533. Although the circuit court did not explicitly address the issue, there is little doubt that the questioning that took place was an "interrogation" for purposes of the *Miranda* requirement. Det. Stefan explicitly asked defendant to tell her what happened with the victim as it related to the sexual assault. Thus, the core issue on appeal with respect to *Miranda* is whether defendant was in custody at the time he was interrogated.

"Custody must be determined on the basis of how a reasonable person in the suspect's situation would perceive his or her circumstances and whether the reasonable person would believe that he or she was free to leave." *People v Roberts*, 292 Mich App 492, 504; 808 NW2d 290 (2011). As relevant here, if the individual cannot leave for reasons unrelated to police conduct, "the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Florida v Bostick*, 501 US 429, 436; 111 S Ct 2382; 115 L Ed2d 389 (1991). Relevant factors in this analysis include: "(1) the location of the questioning, (2) the duration of the questioning, (3) statements made during the interview, (4) the presence or absence of physical restraints during the questioning, and (5) the release of the interviewee at the end of the questioning." *Barritt*, 325 Mich App at 562-563 (citations omitted). "Whether an individual is effectively 'in custody' is based on the totality of the circumstances." *Roberts*, 292 Mich App at 505.

That defendant was interviewed in his hospital room weighs against finding that he was in custody, because a hospital room does not present the same coercive atmosphere as a police station or other environment where control by the police is evident. See *People v Kulpinski*, 243 Mich App 8, 25; 620 NW2d 537 (2000) ("[T]he fact that the defendant was in the hospital does not automatically imply that the environment was coercive."). The interview with Det. Stefan lasted approximately 40 minutes, which is not oppressive or otherwise indicative of a custodial atmosphere. See *United States v Eymann*, 962 F3d 273, 285 (Ca 7, 2020) (stating that the defendants were not in custody, in part, because the "duration of the questioning was . . . brief.").[3] In addition, there was no evidence that Det. Stefan used defendant's condition or hospitalization as a tool to obtain his statements. See *Wolfrath v Lavellee*, 576 F2d 965, 973 (CA 2, 1978) ("[B]ecause there was no element of improper police tactics, because the evidence was uncontradicted that Wolfrath's condition, though perhaps weakened by his ordeal, was nonetheless strong and that he was alert and responsive, we hold that Wolfrath failed to substantiate his claim

---

[3] While opinions from lower federal courts are not binding, we may consider them for their persuasive authority. *People v Fomby*, 300 Mich App 46, 50 n 1; 831 NW2d 887 (2013).

-3-

that the admission into evidence of his St. Vincent's [Hospital] confession denied him due process of law.").

It is true that defendant's freedom of movement was limited by the medical treatment he was receiving, particularly the intravenous fluids. However, defendant was not formally restrained by law enforcement. See *Stansbury v California*, 511 US 318, 322; 114 S Ct 1526; 128 L Ed 2d 293 (1994) (stating that a person is in custody when formally arrested or had his or her freedom of movement restrained to the degree associated with a formal arrest). And while the door to the hallway was closed, it was not locked. Indeed, an individual entered the room during the interview, demonstrating that defendant was not restrained to the confines of the hospital room. Moreover, closing the door could be viewed as a considerate gesture given the nature of the subject matter discussed. And the fact that Det. Stefan was armed during the interview does not change our conclusion. At no point during the interview did Det. Stefan touch her service weapon, which was holstered on her right side and slightly behind her, obscured from defendant's view, who was in front of her and to her left.

Defendant claims that as a Jordanian, he had little experience with law enforcement in the United States, which put him in a disadvantaged position during the encounter. However, we fail to see how this fact has any relevance to whether defendant was in custody when he was questioned. The appropriate question is whether "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Bostick*, 501 US at 436. Det. Stefan asked defendant if he was willing to speak with her, implying that defendant could refuse. Under these circumstances, a reasonable person would have felt free to decline Det. Stefan's request to talk.

Under the totality of the circumstances, we conclude the circuit court did not err when it determined that defendant was not in custody during the interview.[4] We therefore address defendant's second argument—that his statement to Det. Stefan was not voluntarily made.

## B. VOLUNTARINESS OF STATEMENT

"[T]he use of an involuntary statement in a criminal trial, either for impeachment purposes or in the prosecution's case in chief, violates due process." *People v Cipriano*, 431 Mich 315, 331; 429 NW2d 781 (1988).[5] "Whether a statement was voluntary is determined by examining the conduct of the police." *Shipley*, 256 Mich App at 373. In *Cipriano*, the Michigan Supreme Court articulated certain factors to enable courts to assess the voluntariness of a defendant's statement to police:

---

[4] Because we conclude that defendant was not in custody when he was questioned by Det. Stefan, we need not address defendant's arguments whether the "public safety" and "routine booking question" exceptions to the *Miranda* requirement apply.

[5] Both the United States Constitution and the Michigan Constitution guarantee that criminal defendant receive due process of law. US Const, Am XIV; Const 1963, art 1, § 16.

In determining whether a statement is voluntary, the trial court should consider, among other things, the following factors: the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

The absence or presence of any one of these factors is not necessarily conclusive on the issue of voluntariness. The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made. [*Cipriano*, 431 Mich at 334 (citations omitted).]

For a confession to be considered involuntary, "there must be a substantial element of coercive police conduct" because "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *People v Wells*, 238 Mich App 383, 388; 605 NW2d 374 (1999) (quotation marks and citations omitted). Unless the conduct of the police is causally related to the confession, "there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Colorado v Connelly*, 479 US 157, 164; 107 S Ct 515; 93 L Ed 2d 473 (1986).

Defendant has failed to show the necessary predicate that defendant's statements were the product of police coercion. Although it is not entirely clear from defendant's arguments to the Court, defendant appears to assert that Det. Stefan employed coercive tactics by not informing defendant that she was going to interview him and that she had a preformed opinion before the interview that defendant was guilty of the suspected crimes. We fail, however, to understand how these facts constitute police coercion. Law enforcement routinely questions suspects without warning, quite obviously when they have cause to believe the suspect has committed a crime. We have never held, and we reject the notion, that these facts constitute police coercion. Defendant also raises the issue of the fact that the interview took place in defendant's hospital room. Again, we fail to see how this constitutes coercion. It was defendant's choice to be in the hospital, not Det. Stefan's.

There is no evidence that defendant had been deprived of food, sleep, or medical attention. Indeed, he was under the care and supervision of the medical staff at Ascension St. John Hospital at the time. There is also no indication that defendant was in any physical pain or that his physical condition was grave. Defendant, who was not restrained at any point before or during the questioning, was upright in his hospital bed and appeared alert during the length of the interview. Moreover, the length of the interview was not itself coercive. The 40-minute questioning was brief, and there is no indication that defendant was physically drained by the interview.

With respect to defendant's age and mental acuity, the video recording does not demonstrate that defendant was in way compromised or confused. While most of defendant's statements about the sexual assault were short and lacking in detail, this does not suggest that defendant is uneducated or unintelligent. Rather, defendant's answers were most likely the product of his reluctance to talk about the details of what he did. And while defendant's first language is not English, he spoke fluently and clearly.

It is alleged that at some point before being admitted to Ascension St. John Hospital, defendant attempted suicide. However, there is no clear indication in the recording that any thoughts of suicide impacted defendant's ability to make a "free and unconstrained choice" to describe what he did to the victim. See *Connelly*, 479 US at 165 (stating that a court considering the voluntariness of a confession are not required to "divine a defendant's motivation for speaking or acting as he did even though there be no claim that governmental conduct coerced his decision"). True, defendant was quite emotional during the interview. Yet, there is no evidence that any suicidal thoughts by themselves, or in combination with other factors, overcame defendant's ability to decide for himself whether he would admit to what he had done. Nor is there any indication that Det. Stefan used defendant's suicidal ideation as a tool to draw from him a confession.

In sum, the totality of the circumstances surrounding defendant's confession supports the conclusion that it was freely and voluntarily made. Thus, the circuit court did not err when it denied defendant's motion to suppress.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Anica Letica

-6-