*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL JAMES MEDLEN,

        Defendant-Appellant.

UNPUBLISHED
January 15, 2019

No. 334745
Wayne Circuit Court
LC No. 16-003171-01-FH

Before: LETICA, P.J., and CAVANAGH and METER, JJ.

PER CURIAM.

A jury convicted defendant of felonious assault, MCL 750.82, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant to five years' probation for the assault conviction and two years' imprisonment for the felony-firearm conviction. Defendant appeals as of right. We affirm.

Defendant was convicted of assaulting John Hall on the evening of March 13, 2016, in Hall's Dearborn Heights garage. Hall had been in a long-term relationship with defendant's sister, and Hall, defendant's sister, and their children were all living at defendant's mother's house. The prosecution presented evidence that on the day of the incident, defendant went to the house and confronted Hall—who was sitting in the garage, watching TV—apparently because defendant was upset that Hall had called his mother a derogatory name. Defendant punched Hall in the face and grabbed a beer bottle and struck Hall in the head. Hall wrestled defendant to the ground, but then let him go. Defendant then produced a gun from his waistband and threatened Hall for disrespecting his family. Both men then left the garage and defendant left the premises. Defendant's sister saw a portion of the incident and observed defendant poking Hall in the chest. Hall's eight-year-old daughter, KH, told a police officer that defendant pointed a gun at Hall, punched Hall in the chest and eye, and pointed the gun's laser at Hall's face. The police recovered a handgun from defendant's vehicle. Defendant gave a video-recorded statement to the police. Defendant claimed that he acted in self-defense.

On appeal, defendant raises five issues of ineffective assistance of counsel and argues that his vide-recorded statement should not have been admitted at trial because it was obtained in

violation of his right to counsel. Defendant moved for a new trial on these grounds in the trial court and two evidentiary hearings were held. The trial court denied defendant's motion for a new trial.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

This Court reviews a trial court's decision on a motion for a new trial for an abuse of discretion. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). A claim alleging ineffective assistance of counsel presents a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Questions of law are reviewed de novo, and a trial court's findings of fact, if any, are reviewed for clear error. *Id*. "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*.

The effective assistance of counsel is presumed, and the burden is on the defendant to establish the contrary. *LeBlanc*, 465 Mich at 578; *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to 'affirmatively entertain the range of possible' reasons that counsel may have had for proceeding as he or she did." *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589, vacated in part on other grounds 493 Mich 864 (2012). "[A] reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission." *Id*. at 22-23. Defendant has the burden of establishing the factual predicate of his ineffective-assistance claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

### A. FAILURE TO OBJECT TO INADMISSIBLE HEARSAY

Defendant first argues that trial counsel was ineffective for failing to object to the admission of audio-recorded hearsay statements of Hall's eight-year-old daughter, KH, who claimed that she witnessed part of the altercation. Defendant contends that KH's statements in the audio-recording were inadmissible hearsay, and he complains that he was unable to confront and cross-examine KH at trial. We agree with the trial court that defense counsel elected not to object to KH's statements as a matter of trial strategy, and that defendant has failed to overcome the strong presumption that counsel's strategy was within the range of reasonable professional conduct. *Gioglio (On Remand)*, 296 Mich App at 20.

A responding police officer spoke to KH after the incident and their conversation, which was captured by an audio recording device attached to the officer's police uniform, was played for the jury. The recorded exchange included the following:

> *Q*. What did you see when he came out? I don't want you to get wet.
>
> *A*. He was pointing the gun, and he kept on punching him in the chest.

-2-

*Q.* Where were you at?

*A.* I was at the window.

*Q.* Ok, and what did you see?

*A.* [indecipherable] my uncle, he kept on punching my dad . . .

*Q.* Where was he punching him at?

*A.* In the chest. He punched him in the eye, and [indecipherable].

*Q.* What did he have a gun in his hand at that time or no?

*A.* Yeah.

*Q.* He did?

*A.* No. He got his gun out and then he was shooting the laser at him.

*Q.* Where was he shooting the laser at?

*A.* At his face.

*Q.* How far away from each other were they?

*A.* Here's my dad, and [indecipherable].

*Q.* So they were pretty close, like you and I are right now. And he was pointing it right at him?

*A.* Yeah.

*Q.* Ok.

Counsel's decisions about what evidence to present and how to argue are matters of trial strategy, *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), for which counsel has wide discretion, *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). As the trial court observed, trial counsel, an attorney with 17 years of experience, testified at the evidentiary hearing that he had reviewed KH's recorded statement and did not find that her statement was wholly inconsistent with the account that defendant gave to the police. More significantly, trial counsel explained that he decided not to object to the recording because, although realizing that KH's statements were hearsay, he believed the prosecutor would have called the eight-year-old child as a witness if her audio-recorded statements were excluded. KH was on the prosecution's witness list, and the prosecutor testified that, had there been a successful objection, he would have called KH to testify. Trial counsel explained that he considered the risks of having the eight-year-old child testify before the jury, recounting seeing her father assaulted by defendant, and trial counsel being compelled to cross-examine the young child and accuse her of lying.

Given the content of the child's recorded statement, counsel believed that it was better to allow it, without the child's live testimony, and then to argue in closing argument that her statement should be accorded little weight because it was influenced by hearing what her father had said occurred. At trial, defense counsel challenged the credibility of the child's statement in his closing argument.

On this record, trial counsel's primary reason for not objecting to KH's recorded hearsay statement—that it was more advantageous to accept the recorded statement than risk injurious live testimony—was objectively reasonable and within the range of reasonable professional conduct, particularly considering that the child's statement was not entirely inconsistent with defendant's statement and that trial counsel was able to effectively argue during closing argument why the jury should not believe the child's statement. We "will not second-guess defense counsel's judgment on matters of trial strategy." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). The fact that the strategy chosen by defense counsel did not work does not constitute ineffective assistance of counsel. *People v Stewart*, 219 Mich App 38, 42; 555 NW2d 715 (1996). Defendant argues that the trial court should not have believed trial counsel's explanation for why he did not object to the recorded statement. The trial court found, however, that counsel's testimony was credible. We must give deference to a trial court's superior ability to judge the credibility of witnesses who appeared before it. *People v Farrow*, 461 Mich 202, 209; 600 NW2d 634 (1999). Because defendant failed to overcome the strong presumption of sound strategy with respect to counsel's decision not to object to the recorded statement, the trial court did not abuse its discretion by denying defendant's motion for a new trial on this ground.

## B. FAILURE TO OBJECT TO THE PROSECUTOR'S CONDUCT

Defendant argues that trial counsel was ineffective for failing to object to various comments by the prosecutor during closing and rebuttal arguments, in which defendant accuses the prosecutor of denigrating both defendant and defense counsel. In the challenged remarks, the prosecutor referenced defendant's concealed pistol license ("CPL") and the National Rifle Association ("NRA"), which defendant contends "paint[ed] [him] as a villainous 'gun nut,' " and denigrated his choice of trial counsel, who had an affiliation with the NRA. We disagree.

A prosecutor may not denigrate a defendant with prejudicial or intemperate comments, *People v Bahoda*, 448 Mich 261, 283; 531 NW2d 659 (1995), or personally attack the credibility of defense counsel, *People v McLaughlin*, 258 Mich App 635, 646; 672 NW2d 860 (2003). However, prosecutors have great latitude when arguing at trial. *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010). A prosecutor need not state his inferences in the blandest possible language, *Bahoda*, 448 Mich at 282; *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007), and a "prosecutor may fairly respond to an issue raised by the defendant." *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008).

Viewed in context, the prosecutor's remarks did not involve a personal attack on defendant, or trial counsel's credibility, but were based on the evidence and fairly responded to defense arguments. The prosecutor's comments about defendant's CPL and defendant's concern about jeopardizing his CPL were intended to attack the credibility of defendant's belated self-defense theory. Specifically, they offered an explanation for why defendant was motivated to lie

about what transpired, just as he had originally not been forthcoming with the police about brandishing a firearm. As observed by the prosecutor, defendant admitted that he initially lied because he was concerned about the Gun Board. Indeed, even defense counsel recognized that defendant "was concerned about his concealed pistol license." The prosecutor mentioned the "NRA" hat that defendant was wearing during his video-recorded statement, which was admitted as evidence, to further support the theory that defendant was highly motivated to lie about what transpired because he was principally concerned about his ability to maintain his right to possess and carry a firearm. The prosecutor gave reasons, grounded in the evidence, for why the jury should reject defendant's self-defense theory, and defendant's desire to maintain his CPL was one of them. Further, the comments were not a personal attack on gun control, but a commentary on the credibility of the self-defense theory in light of the evidence presented at trial. Indeed, defendant fails to mention that the prosecutor expressly stated that he was "not taking a personal stance or a personal position on" the NRA. Defendant's possession of the NRA hat during his interview and his comments about not wanting to jeopardize his CPL were matters in evidence, and the prosecutor's mere use of the terms "CPL," "NRA," and "National Rifle Association" when commenting on this evidence did not make the arguments improper.

Defendant also argues that the prosecutor further denigrated him and his trial counsel by remarking during rebuttal argument that defendant had hired trial counsel because he

teaches CPL classes, that teaches you what the law is. Make no mistake about it. The NRA, the National Rifle Association. This case has absolutely nothing to do with self-defense.

It was defense counsel, however, who first mentioned in his closing argument that he "teaches the legal portion of concealed pistol license class." After further discussing what he teaches in CPL class, defense counsel then argued that "[t]his situation fit the bill for the use of deadly force, yet my client did not use deadly force," and that defendant's use of his gun was "a reasonable use of non-deadly force[.]" In the challenged comments, the prosecutor was simply responding to defense counsel's prior remarks. Accordingly, the prosecutor's remarks were not improper. Therefore, defendant cannot establish that trial counsel was ineffective for failing to object to them. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Consequently, defendant is not entitled to a new trial on this ground.

## C. FAILURE TO OBJECT TO IMPROPER OPINION TESTIMONY

Defendant next argues that trial counsel was ineffective for failing to object to Sgt. Mueller and Sgt. Thomas providing "faux expert opinion[s]" regarding the nature of defendant's injuries, contrary MRE 702. Again, we disagree.

During the prosecutor's direct examination of Sgt. Thomas, the following exchange occurred regarding defendant's injuries:

*Q*. . . . . Could you see [defendant's] face when he's talking to you?

*A*. Yes, I could.

*Q.* At the time, did you see any visible signs that [defendant] had been punched in the face?

*A. There were no signs of any kind of trauma or anything like that.* [Emphasis added.]

In response to a question from the jury, Sgt. Mueller testified as follows about an injury in defendant's "ring finger area":

*Q.* The scratches on [defendant's] hand that you observed, could you please describe them to us?

*A.* From my recollection, only just small little cuts somewhere around this area (indicating).

During the prosecutor's redirect examination of Sgt. Mueller, the following exchange occurred:

*Q.* The injuries that you saw on [defendant's] hand, were they consistent with any of the previous factors that I've just mentioned? And if you don't know, that's fine.

*A. The injuries to his hand were superficial.* They would have to have healed a little bit and I can't answer where those little cuts came from. [Emphasis added.]

MRE 701 permits lay witnesses to provide testimony in the form of an opinion if the opinion is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." But " 'a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense.' " *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013) (citation omitted). Courts have liberally applied MRE 701 in order to help develop a clearer understanding of facts for the trier of fact. *People v Oliver*, 170 Mich App 38, 50; 427 NW2d 898 (1988), mod on other grounds 433 Mich 862 (1989). Thus, a lay witness may offer an opinion on matters that are related to his observations and findings and are not "overly dependent upon scientific, technical, or other specialized knowledge." *Id.* (citation omitted); see also *McLaughlin*, 258 Mich App at 657-659.

Sgt. Thomas testified that he had been employed with the Dearborn Police Department for 16 years and had observed people who had been punched in the face. In essence, he testified that, based on his experience, there were "no signs of any kind of trauma" indicating that defendant had been punched in the face. Sgt. Mueller testified that he had also been a Dearborn Heights police officer for 16 years and had investigated cases involving "bite marks," "teeth marks," and "where people were cut with bottles or knives or anything like that." Based on his observations, Sgt. Mueller opined that the "injuries to [defendant's] hand were superficial." Both Sgt. Thomas and Sgt. Mueller based their opinions on their own observations of defendant's injuries and their years of experience, and neither officer claimed that his opinion was based on any specialized, technical, or scientific knowledge. Opinions of police officers

-6-

who have not been qualified as experts are admissible under MRE 701 if they arise from the officers' observations, they are generally based on common sense, and they are not overly dependent upon scientific expertise. *Richardson v Rider Truck Rental, Inc*, 213 Mich App 447, 455-456; 540 NW2d 696 (1995); *Oliver*, 170 Mich App at 50. Because the officers' testimony was rationally based on their perceptions of defendant, and was relevant and helpful to determine the credibility of defendant's claim that he was attacked by Hall and they had a fight, the testimony was admissible under MRE 701. Therefore, trial counsel was not ineffective for failing to object to the challenged testimony. See *Ericksen*, 288 Mich App at 201. Accordingly, the trial court did not err by finding that defendant was not denied the effective assistance of counsel, and thus, did not abuse its discretion by denying defendant's motion for a new trial on this ground.

### D. FAILURE TO INVESTIGATE AND INTRODUCE PROPENSITY EVIDENCE

Defendant's next ineffective assistance of counsel claim is that trial counsel was ineffective for failing to introduce, through the testimony of defendant's mother and sister, evidence of an incident in 2013 when Hall assaulted defendant's mother, by breaking a plate on her head, to show Hall's propensity for violence. Again, we agree with the trial court that defendant has not overcome the strong presumption that trial counsel's performance was within the range of reasonable professional conduct. See *Gioglio (On Remand)*, 296 Mich App at 20.

Although defendant argues that trial counsel failed to investigate the assaultive incident between his mother and Hall, it was undisputed that trial counsel was aware of the incident and made a strategic decision not to present it. At an evidentiary hearing, the trial court heard from defendant's mother and sister, and trial counsel on this issue. As the trial court observed, trial counsel, given the circumstances, decided not to introduce evidence of the incident between Hall and defendant's mother because he feared it would undermine defendant's self-defense theory. Trial counsel explained that the risk in delving into the history of the two-year-old incident was that it might undermine the defense theory that defendant had no choice other than to defend himself, and bolster the prosecution's theory that defendant was the initial aggressor and went to Hall's residence (armed with a gun) to start a fight with defendant because he was tired of Hall's treatment of defendant's mother. At trial, trial counsel introduced evidence tending to show Hall's penchant for violence by cross-examining Hall about his posting on Facebook that he "beat[] [defendant's] ass," illustrated the difference in Hall's larger size as compared to defendant's size, and elicited that Hall no longer lived at that house.

Given the record, trial counsel's considered reason for not introducing the 2013 incident was objectively reasonable. Again, counsel's decisions about what evidence to present are matters of trial strategy, *Rockey*, 237 Mich App at 76, which we will not second-guess. *Benton*, 294 Mich App at 203. Defendant has failed to overcome the strong presumption of sound strategy in counsel's decision not to introduce the 2013 incident. Moreover, as the trial court observed, given the conflicts between the witnesses' proposed testimony and the police and hospital reports regarding the 2013 incident, it is not reasonably probable that the outcome of the trial would have been different had this evidence been introduced. Accordingly, the trial court did not abuse its discretion by denying defendant's motion for a new trial with respect to this issue.

## E.  FAILURE TO INTRODUCE IMPEACHMENT EVIDENCE

Defendant's last ineffective assistance of counsel claim is that trial counsel was ineffective for failing to impeach Officer Sznyr and Hall with a police investigation report that stated that Hall hit defendant on the head with a bottle.  We disagree.

Decisions regarding how to impeach witnesses and what questions to ask are matters of trial strategy.  *Rockey*, 237 Mich App at 76.  Preliminarily, although defendant mentions Officer Sznyr, it was Detective Mueller who made a notation in the investigation report that Hall stated that he hit defendant on the head with a bottle.  At an evidentiary hearing, Detective Mueller explained that this was a mistake on his part, which he corrected by preparing an addendum indicating that it was defendant who had struck Hall with a bottle.  The addendum was admitted into evidence at the hearing.   The detective's correction was consistent with defendant's videotaped statement in which defendant stated that he hit Hall on the head with a bottle and never indicated that Hall hit him with a bottle.  At the evidentiary hearing, the defense stipulated that defendant also did not aver in his affidavit that Hall hit him with a bottle, which further supports that Detective Mueller's initial notation was simply a mistake.  Trial counsel testified that he preferred to present cases with conciseness and focus, and, in some cases, there is a risk in asking too many questions.  Given the record, it would have been futile for trial counsel to question Hall and Detective Mueller regarding a mistake in the investigation report that was corrected, particularly because the incorrect statement could have been easily explained at trial and the incorrect statement was actually inconsistent with defendant's own version of the incident.  Trial counsel was not obligated to pursue a meritless line of questioning.  See *Ericksen*, 288 Mich App at 201.  Defendant cannot establish an ineffective assistance of counsel claim on this basis, and, therefore, is not entitled to a new trial.

## II.  SUPPRESSION OF DEFENDANT'S VIDEOTAPED STATEMENT

Lastly, we address defendant's claim that his videotaped statement was inadmissible because it was obtained after he had invoked his right to counsel.  According to defendant, he invoked his right to counsel on the evening of the incident and, only after being approached and essentially coerced by Dearborn Police Sgt. Corey Smith, defendant's former childhood friend, did defendant consent to the videotaped interview.  Defendant therefore contends that the videotaped statement was unlawfully obtained and should not have been admitted.  We disagree.  When reviewing a trial court's decision on a motion to suppress evidence, we review the trial court's findings of fact for clear error and its ultimate decision whether to suppress the evidence de novo.  *People v Hyde*, 285 Mich App 428, 438; 775 NW2d 833 (2009).

"A criminal defendant has a constitutional right to counsel during interrogation."  *People v Tierney*, 266 Mich App 687, 710-711; 703 NW2d 204 (2005).  Once a defendant invokes his right to counsel, the police must terminate their interrogation immediately and may not resume questioning until counsel arrives or the defendant initiates further communication with the police.  *Edwards v Arizona*, 451 US 477, 484; 101 S Ct 1880; 68 L Ed 2d 378 (1981); *People v Elliott*, 494 Mich 292, 302; 833 NW2d 284 (2013).  Evidence obtained in violation of this

principle is subject to suppression. *People v Harris*, 261 Mich App 44, 55; 680 NW2d 17 (2004).

In this case, the trial court considered the testimony of Detective Mueller (the interviewing detective), Sgt. Thomas (the officer who was with defendant when defendant claims to have invoked his right to counsel), Sgt. Smith, and defendant from the evidentiary hearing. The court expressly determined that the police officers were credible, and discredited defendant's testimony that he made requests for counsel that were ignored and that his statement was coerced. The court also observed that the videotaped interview supported its finding that defendant knowingly and willingly waived his right to consult with an attorney, given that defendant never mentioned to the interviewing detective that he had previously invoked his right to counsel. In addition, the documentary evidence of defendant's *Miranda*[1] waiver-of-rights form further supports the trial court's finding that defendant knowingly and voluntarily waived his right to consult with an attorney. It is undisputed that defendant was advised of his *Miranda* rights, indicated that he understood those rights, initialed each right, and signed a written waiver. Again, this Court will defer to the "trial court's superior ability to view the evidence and witnesses." *People v Peerenboom*, 224 Mich App 195, 197; 568 NW2d 153 (1997). Apart from reiterating his own claim that he invoked his right to counsel, defendant provides no reason why we should disregard the trial court's credibility determination. Consequently, the trial court did not abuse its discretion by denying defendant's motion for a new trial on this issue.

Affirmed.

/s/ Anica Letica
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).