*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

FREDERICK MICHAEL FREDELL,

        Defendant-Appellant.

FOR PUBLICATION
January 20, 2022
9:15 a.m.

No. 351971
Genesee Circuit Court
LC No. 16-039787-FC

Before: CAMERON, P.J., and BORRELLO and REDFORD, JJ.

BORRELLO, J.

Defendant appeals as of right his convictions, following a jury trial, of two counts of involuntary manslaughter, MCL 750.321;[1] two counts of operating a vehicle while intoxicated or visibly impaired causing death ("OWI causing death"), MCL 257.625(1), (3), and (4); three counts of operating a vehicle while intoxicated or visibly impaired causing serious impairment of a body function ("OWI-SI"), MCL 257.625(1), (3), and (5)(a); two counts of reckless driving causing death, MCL 257.626(4); and three counts of reckless driving causing serious impairment of a body function, MCL 257.626(3). The trial court sentenced defendant to prison terms of 86 months to 15 years each for the involuntary manslaughter and OWI causing death convictions, 28 to 60 months each for the OWI-SI and reckless driving causing serious impairment convictions, and 6 to 15 years for each reckless driving causing death conviction. The court ordered the sentences for OWI causing death to be served consecutively, and all other sentences were to be served concurrently.

For the reasons set forth in this opinion, we affirm defendant's convictions and sentences, but we remand to permit defendant to pursue corrections to his sentencing information report that will not affect his guidelines range or sentence, and we remand for purposes of permitting the trial court to perform the ministerial task of correcting a clerical error in the judgment of sentence.

---

[1] Defendant was charged with two counts of second-degree murder, MCL 750.317, but the jury found him guilty of the lesser offense of involuntary manslaughter.

## I. BACKGROUND

Defendant's convictions arise from a September 4, 2015 motor vehicle collision on I-69 in Genesee County when the Corvette that defendant was driving collided with a Dodge Ram pickup truck driven by Danyelle Barker. Danyelle's husband, Ronald Weiss, Jr., two of their children, and Erin Stone, who was a friend of one of the children, were passengers in the truck. Ronald and Erin died from injuries each sustained in the collision. Danyelle and her two children survived, but they each sustained serious, permanent injuries.

Earlier that day, defendant's wife had contacted the police after defendant brought a gun into the bedroom, placed it on the bed, and asked his wife to shoot him. When the police arrived, defendant remarked that he was having a bad day, he seemed depressed, and he stated that his wife no longer loved him and they were going through a divorce. Defendant agreed to go to the hospital for an evaluation. By the time defendant returned home from the hospital, his wife had left to stay with a family friend. At approximately 9:00 p.m., defendant told his son that he was going for a drive in his Corvette. Defendant's son tried to persuade defendant not to go, but he was unsuccessful. After defendant left, his son went back into the house and saw "a pint of Jim Beam whiskey" on the counter and approximately "a dozen pills scattered about the kitchen." Defendant's son testified that defendant had long been prescribed medication for pain and that these particular pills were Oxycontin pills. Defendant's son also testified that it was unusual for defendant to drink alcohol.

Later that night, Clayton Township police officers Rod Wurtz and Adam Chesnutt were performing stationary radar duty. Wurtz observed defendant's Corvette traveling west on I-69 at 137 miles an hour. Wurtz testified that he and Chesnutt began to follow the Corvette and that he saw "quite an impact." Chesnutt testified that he approached the site of the crash and saw a Dodge Ram pickup truck about 25 yards from the road. Chesnutt and Wurtz found Danyelle in the driver's seat of the truck. The other occupants of the truck had all been ejected during the accident and were found by responders in the area around the truck. Defendant's Corvette was found approximately 50 yards from the road in the weeds, and defendant was in the driver's seat.

According to an accident investigator, evidence indicated that the front of defendant's Corvette struck the pickup truck from behind, "kind of like a wedge lifting it up and putting it on to the hood of the Corvette." The pickup truck then hit a guardrail, which caused it to tumble off its axis before eventually landing on its wheels. Data from a data recorder in defendant's Corvette showed that it was traveling 121 miles per hour five seconds before the collision and had slowed to 79 miles per hour one second before the collision.

Toxicology testing of blood samples taken from defendant at 12:10 a.m. on September 5, 2015, indicated that he had a blood alcohol level of .034 grams of alcohol per 100 milliliters of blood, 10 nanograms of THC per milliliter, and 176 nanograms of oxycodone per milliliter.

## II. DOUBLE JEOPARDY

Defendant argues that his multiple convictions of involuntary manslaughter, OWI causing death, reckless driving causing death, OWI-SI, and reckless driving causing serious impairment of a body function contravene double-jeopardy protections. Defendant specifically contends that his

six convictions based on the deaths of two individuals and six convictions based on the injuries to three other individuals violated the multiple punishment strand of double-jeopardy protection.

## A. ISSUE PRESERVATION AND STANDARD OF REVIEW

Because defendant did not argue in the trial court that his multiple convictions violated double-jeopardy protections, this issue is unpreserved on appeal.[2] *People v Ackah-Essien*, 311 Mich App 13, 30; 874 NW2d 172 (2015) ("To preserve appellate review of a double jeopardy violation, a defendant must object at the trial court level."). Although "a double jeopardy issue presents a significant constitutional question that will be considered on appeal regardless of whether the defendant raised it before the trial court," this Court nevertheless reviews "an unpreserved claim that a defendant's double jeopardy rights have been violated for plain error that affected the defendant's substantial rights . . . ." *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008). To have affected the defendant's substantial rights, the plain error must have affected the outcome of the proceedings in the trial court. *Id*. If these requirements are met, reversal is warranted only if the error "resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id*.

Any questions of statutory interpretation or constitutional law are reviewed de novo. *People v Miller*, 498 Mich 13, 16-17; 869 NW2d 204 (2015).

## B. ANALYSIS

Both the United States Constitution and the Michigan Constitution prohibit placing a defendant twice in jeopardy for a single offense. US Const, Am V; Const 1963, art 1, § 15; *People v Dickinson*, 321 Mich App 1, 10; 909 NW2d 24 (2017). In *Miller*, 498 Mich at 17, our Supreme Court explained that

> [t]he prohibition against double jeopardy protects individuals in three ways: "(1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." The first two protections comprise the "successive prosecutions" strand of double jeopardy, while the third protection is known as the "multiple punishments" strand. [Citations omitted.]

---

[2] During the course of discussions regarding jury instructions, the trial court sua sponte stated that "[t]here's no double jeopardy problem on these crimes." This statement was made within a longer monologue by the trial court, did not prompt any objection by defendant, and was not responsive to any contemporaneous objection or argument by defendant. Therefore, we do not consider this statement to constitute satisfaction of defendant's obligation to properly preserve issues for appeal. *People v Ackah-Essien*, 311 Mich App 13, 30; 874 NW2d 172 (2015). Nevertheless, we would reach the same conclusions on defendant's appellate double-jeopardy arguments even if they had been preserved.

At issue in this case is whether defendant's multiple convictions violate the multiple punishments strand of double jeopardy.

"The multiple punishments strand of double jeopardy is designed to ensure that courts confine their sentences to the limits established by the Legislature and therefore acts as a restraint on the prosecutor and the Courts." *Id*. at 17-18 (quotation marks and citations omitted). If the Legislature specifically authorizes cumulative punishments under two statutes, the multiple punishment strand of double jeopardy is not implicated. *Id*. at 18. On the other hand, "where the Legislature expresses a clear intention in the plain language of a statute to prohibit multiple punishments, it will be a violation of the multiple punishments strand for a trial court to cumulatively punish a defendant for both offenses in a single trial." *Id*.

As observed in *Miller*, the Legislature "does not always clearly indicate its intent with regard to the permissibility of multiple punishments." *Id.* at 19. "When legislative intent is not clear, Michigan courts apply the 'abstract legal elements' test articulated in [*People v Ream*, 481 Mich 223; 750 NW2d 536 (2008),] to ascertain whether the Legislature intended to classify two offenses as the 'same offense' for double jeopardy purposes." *Miller*, 498 Mich at 19. This test is the same test set forth by the United States Supreme Court in *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932). *Ream*, 481 Mich at 227-228, 235, 241-242. "Under the abstract legal elements test, it is not a violation of double jeopardy to convict a defendant of multiple offenses if 'each of the offenses for which defendant was convicted has an element that the other does not . . . .' " *Miller*, 498 Mich at 19 (ellipsis in original), quoting *Ream*, 481 Mich at 225-226. "[B]ecause the statutory elements, not the particular facts of the case, are indicative of legislative intent, the focus must be on these statutory elements[.]" *Miller*, 498 Mich at 19 n 16, quoting *Ream*, 481 Mich at 238. The *Miller* Court summarized the applicable legal framework as follows:

> In sum, when considering whether two offenses are the "same offense" in the context of the multiple punishments strand of double jeopardy, we must first determine whether the statutory language evinces a legislative intent with regard to the permissibility of multiple punishments. If the legislative intent is clear, courts are required to abide by this intent. If, however, the legislative intent is not clear, courts must then apply the abstract legal elements test articulated in *Ream* to discern legislative intent. [*Miller*, 498 Mich at 19 (citation omitted).]

## 1. INVOLUNTARY MANSLAUGHTER AND OWI CAUSING DEATH

We first consider whether defendant's right against double jeopardy was violated by being convicted of both involuntary manslaughter and OWI causing death.

With respect to involuntary manslaughter, MCL 750.321 provides:

> Any person who shall commit the crime of manslaughter shall be guilty of a felony punishable by imprisonment in the state prison, not more than 15 years or by fine of not more than 7,500 dollars, or both, at the discretion of the court.

The offense of OWI causing death is defined in MCL 257.625. At the time defendant committed these offenses, MCL 257.625, as amended by 2014 PA 219,[3] stated, in pertinent part:

> (1) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person is operating while intoxicated.
>
> * * *
>
> (3) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state when, due to the consumption of alcoholic liquor, a controlled substance, or other intoxicating substance, or a combination of alcoholic liquor, a controlled substance, or other intoxicating substance, the person's ability to operate the vehicle is visibly impaired. If a person is charged with violating subsection (1), a finding of guilty under this subsection may be rendered.
>
> (4) A person, whether licensed or not, who operates a motor vehicle in violation of subsection (1), [or] (3) . . . and by the operation of that motor vehicle causes the death of another person is guilty of a crime . . . .

A review of the language of MCL 750.321 and MCL 257.625 does not reflect any expression by the Legislature of its intention with respect to the permissibility of multiple punishments for these offenses. Therefore, we must apply the abstract legal-elements test to determine the Legislature's intention with respect to the permissibility of multiple punishments. *Miller*, 498 Mich at 19.

In *People v Holtschlag*, 471 Mich 1, 21-22; 684 NW2d 730 (2004), our Supreme Court explained the crime of involuntary manslaughter[4] as follows:

> [I]t must be kept in mind that the sole element distinguishing manslaughter and murder is malice and that [i]nvoluntary manslaughter is a catch-all concept including all manslaughter not characterized as voluntary: Every unintentional killing of a human being is involuntary manslaughter if it is neither murder nor voluntary manslaughter nor within the scope of some recognized justification or excuse. If a homicide is not voluntary manslaughter or excused or justified, it is, generally, either murder or involuntary manslaughter. If the homicide was

---

[3] MCL 257.625 was amended by 2017 PA 153, effective February 6, 2018, and 2020 PA 383, effective March 24, 2021, but these amendments do not contain any changes relevant to the issues raised this appeal.

[4] As this Court explained in *People v Kulpinski*, 243 Mich App 8, 13 n 3; 620 NW2d 537 (2000), "[t]he crime of involuntary manslaughter is codified only insofar as the punishment is concerned; its definition remains rooted in common law."

committed with malice, it is murder. If it was committed with a lesser mens rea of gross negligence or an intent to injure, and not malice, it is not murder, but only involuntary manslaughter. [Quotation marks and citations omitted; second alteration in original.]

In this case, defendant was charged with second-degree murder and the jury was also instructed on involuntary manslaughter as a lesser offense. The jury was specifically instructed that it could find defendant guilty of involuntary manslaughter if defendant caused the deaths of the two decedents when defendant's vehicle crashed with the vehicle in which the decedents were passengers and if defendant had acted *in a grossly negligent manner* in doing so. We note that this was the apparent theory of prosecution in this case with respect to involuntary manslaughter, being cognizant of the fact that multiple potential theories may support a charge for this "catch-all" offense. See *Holtschlag*, 471 Mich at 16-17, 21; see also *People v Head*, 323 Mich App 526, 532; 917 NW2d 752 (2018) ("The requisite mental state for the type of involuntary manslaughter charged in this case is gross negligence."). "Gross negligence is only necessary if an intent to injure cannot be established." *Id*. at 19 (quotation marks and citation omitted).[5]

To convict defendant of OWI causing death under MCL 257.625(4), the prosecution was required to prove the following:

(1) the defendant was operating his or her motor vehicle in violation of MCL 257.625(1), [or] (3) . . .; (2) the defendant voluntarily decided to drive, knowing that he or she had consumed an intoxicating agent and might be intoxicated; and (3) the defendant's operation of the motor vehicle caused the victim's death. [*People v Schaefer*, 473 Mich 418, 433-434; 703 NW2d 774 (2005), modified in part on other grounds by *People v Derror*, 475 Mich 316, 334, 341-342 (2006), which in turn was overruled in part on other grounds by *People v Freezel*, 486 Mich 184, 205 (2010).]

In this case, defendant argues that it is not possible to commit the offense of OWI causing death without also committing involuntary manslaughter because the offense of OWI causing death necessarily involves the grossly negligent act of driving a vehicle while intoxicated and causing the death of another as a result. Defendant incorrectly focuses on the particular facts of the case rather than the legal elements of the crimes. See *Miller*, 498 Mich at 19 & n 16.

OWI causing death does not require the prosecution to prove gross negligence. *Schaefer*, 473 Mich at 434; see also *id*. at 422 n 4 (stating that under MCL 257.625(4), "the prosecution need

---

[5] We remain aware, however, that the particular facts of the case are not the focus when applying the *Blockburger* test. *Miller*, 498 Mich at 19 n 16. Nevertheless, it is relevant that defendant was convicted of involuntary manslaughter under a gross negligence theory because gross negligence was therefore undisputedly an element of this particular offense of which defendant was convicted. *Miller*, 498 Mich at 19 ("Under the abstract legal elements test, it is not a violation of double jeopardy to convict a defendant of multiple offenses if each of the offenses for which defendant was convicted has an element that the other does not . . . .") (quotation marks and citation omitted; ellipsis in original).

not prove negligence or gross negligence by the defendant" and "the defendant must have 'voluntarily' decided to drive 'knowing that he had consumed an intoxicating liquor' ") (citation omitted). In contrast, the prosecution was required to prove gross negligence to support defendant's convictions for involuntary manslaughter. *Holtschlag*, 471 Mich at 19, 21-22. Thus, convicting defendant of involuntary manslaughter required proof of an element that OWI causing death did not.

Additionally, a conviction for OWI causing death requires (1) proof that the defendant operated a vehicle while intoxicated or while the defendant's ability to operate the vehicle was visibly impaired "due to the consumption of alcoholic liquor, a controlled substance, or other intoxicating substance, or a combination of alcoholic liquor, a controlled substance, or other intoxicating substance," as well as (2) proof that the defendant voluntarily decided to drive knowing that he or she had consumed an intoxicating agent and might be intoxicated. MCL 257.625(1), (3), and (4); *Schaefer*, 473 Mich at 434. Involuntary manslaughter does not require proof of these elements. *Holtschlag*, 471 Mich at 21-22. Therefore, convicting defendant of OWI causing death also required proof of an element that involuntary manslaughter did not.

Because "each of the offenses for which defendant was convicted has an element that the other does not," it was not a violation of double jeopardy to convict defendant of both involuntary manslaughter and OWI causing death. *Miller*, 498 Mich at 19 (quotation marks and citation omitted); see also *People v Kulpinski*, 243 Mich App 8, 15-16, 23; 620 NW2d 537 (2000) (holding that involuntary manslaughter and OWI causing death each contained an element that the other did not such that convicting the defendant of both offenses did not violate double jeopardy under the *Blockburger* test because involuntary manslaughter required proof of gross negligence, while OWI causing death did not, and OWI causing death required proof that the defendant operated a vehicle while under the influence, while involuntary manslaughter did not).

## 2. INVOLUNTARY MANSLAUGHTER AND RECKLESS DRIVING CAUSING DEATH

Defendant next argues, and the prosecution concedes, that defendant's multiple convictions of involuntary manslaughter and reckless driving causing death violate the multiple punishment strand of double jeopardy, requiring that defendant's convictions of reckless driving causing death be vacated.

We have already set forth the statute relevant to the offense of involuntary manslaughter, MCL 750.321, above. The crime of reckless driving causing death is defined in MCL 257.626, which provides in pertinent part as follows:

> (1) A person who violates this section is guilty of reckless driving punishable as provided in this section.

> (2) Except as otherwise provided in this section, a person who operates a vehicle upon a highway . . . *in willful or wanton disregard for the safety of persons or property* is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

\* \* \*

(4) Beginning October 31, 2010, a person who operates a vehicle in violation of subsection (2) *and by the operation of that vehicle causes the death of another person* is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not less than $2,500.00 or more than $10,000.00, or both. . . . [Emphasis added.]

A review of both MCL 750.321 and MCL 257.626 does not reflect the Legislature's intention with regard to whether cumulative punishments are permitted for these two offenses. Therefore, we must apply the abstract legal-elements test. *Miller*, 498 Mich at 19.

As stated above, to convict defendant of involuntary manslaughter, the prosecution was required to prove an "unintentional killing of a human being" committed with a mens rea of "gross negligence." *Holtschlag*, 471 Mich at 21-22 (quotation marks and citation omitted). Our Supreme Court has described this gross negligence mens rea as "act[ing] carelessly in such a manner that manifests a reckless disregard for another's life." *Id*. at 19. This Court has also explained as follows:

The requisite mental state for the type of involuntary manslaughter charged in this case is gross negligence. See [*Holtschlag*, 471 Mich at 16-17]. Gross negligence means wantonness and disregard of the consequences that may ensue. *People v Feezel*, 486 Mich 184, 195; 783 NW2d 67 (2010). Wantonness exists when the defendant is aware of the risks but indifferent to the results; it constitutes a higher degree of culpability than recklessness. *Id*. at 196. To prove gross negligence, a prosecutor must show:

(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another.

(2) Ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.

(3) The omission [i.e., failure] to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. [*Head*, 323 Mich App at 532 (some quotation marks and last citation omitted; last alteration in original).]

With respect to the crime of reckless driving causing death, our Supreme Court explained as follows in *People v Jones*, 497 Mich 155, 167; 860 NW2d 112 (2014):

Taken together, then, these provisions [in MCL 257.626] demonstrate the Legislature's intent that a person is guilty of reckless driving causing death, a 15-year felony, if that person "operates a vehicle . . . [in willful or wanton disregard for the safety of persons or property] and by the operation of that vehicle causes the death of another person . . . ." [Ellipses and second alteration in original.]

This Court has explained the mental state applicable to the offense of reckless driving causing death as follows:

The conduct proscribed by Subsection (2) of [MCL 257.626] is the operation of a vehicle in "willful or wanton disregard for the safety of persons or property." It is well settled that "[t]o show that a defendant acted in willful and wanton disregard of safety, something more than ordinary negligence must be proved." When willful and wanton behavior is an element of a criminal offense, it is not enough to show carelessness. Rather, "a defendant must have a culpable state of mind . . . ." [*People v Carll*, 322 Mich App 690, 695; 915 NW2d 387 (2018) (citations omitted; ellipsis and second alteration in original).]

Applying the *Blockburger* test, the crime of reckless driving causing death clearly contains an element that involuntary manslaughter does not since a conviction for involuntary manslaughter does not require that the defendant operated a vehicle in causing the death. *Holtschlag*, 471 Mich at 21-22; *Jones*, 497 Mich at 167.

Turning to the next comparison under the *Blockburger* test, a conviction for involuntary manslaughter requires proof that the defendant acted with *gross negligence* in committing an unintentional killing, *Holtschlag*, 471 Mich at 21-22, while the text of MCL 257.626 provides that a person is "guilty of *reckless* driving" causing death if that person operates a vehicle on a highway "*in willful or wanton disregard for the safety of persons or property*" and causes the death of another, MCL 257.626(1), (2), and (4) (emphasis added). Legally significant mental states may be viewed as existing "on a continuum" with "criminal intention" at one end and negligence on the other. *People v Datema*, 448 Mich 585, 604; 533 NW2d 272 (1995). "Criminal negligence, also referred to as gross negligence, lies between the extremes of intention and negligence." *Id*. Gross negligence is similar to intention in that "the actor realizes the risk of his behavior and consciously decides to create that risk," and gross negligence is also similar to negligence in that "the actor does not seek to cause harm, but is simply recklessly or wantonly indifferent to the results." *Id*. (quotation marks and citation omitted). Here, while we acknowledge the similarities between gross negligence and recklessness, both our Supreme Court and this Court have indicated that gross negligence involves a greater degree of culpability than recklessness on the continuum of mental states. See *Feezel*, 486 Mich at 196; *Head*, 323 Mich App at 532. Therefore, defendant's conviction of involuntary manslaughter required proof of an element that was not required to convict him of reckless driving causing death. Because each of these offenses contained an element that the other did not, convicting defendant of both offenses did not violate double jeopardy. *Miller*, 498 Mich at 19.[6]

### 3. OWI CAUSING DEATH AND RECKLESS DRIVING CAUSING DEATH

Next, defendant argues that his convictions for OWI causing death and reckless driving causing death violated double jeopardy for essentially the same reason that he argued his convictions for OWI causing death and involuntary manslaughter violated double jeopardy. Defendant argues that it is impossible to commit OWI causing death without also committing reckless driving causing death because OWI causing death requires a defendant to have committed the reckless act of operating a vehicle while intoxicated or visibly impaired from alcohol or a

---

[6] We acknowledge that the prosecution conceded error, but we have determined that the prosecution's confession of error was erroneous under these circumstances.

controlled substance or their combination. We conclude that defendant has also similarly failed to demonstrate a violation of double jeopardy on this basis.

The plain language of the statutes prohibiting OWI causing death and reckless driving causing death do not shed light on the Legislature's intentions with respect to the permissibility of multiple punishments for these specific offenses. *Miller*, 498 Mich at 19. However, when applying the abstract legal-elements test, it is clear that the two offenses are not the same for double-jeopardy purposes.

Reckless driving causing death requires the prosecution to prove that a defendant operated a vehicle "in willful or wanton disregard for the safety of persons or property." MCL 257.626(2) and (4). OWI causing death does not require as an element that the prosecution prove this mental state: as we have already discussed, OWI causing death does not require proof of the higher gross negligence standard of culpability and does not even require proof of mere ordinary negligence. See *Head*, 323 Mich App at 532 (stating that gross negligence involves a higher degree of culpability than recklessness); *Schaefer*, 473 Mich at 422 n 4 (stating that "the prosecution need not prove negligence or gross negligence by the defendant" under MCL 257.625(4)). Furthermore, OWI causing death requires proof related to the defendant's intoxication or visible impairment, MCL 257.625(1), (3), and (4); *Schaefer*, 473 Mich at 434, while reckless driving causing death contains no such elements, MCL 257.626(2) and (4). Because each of these offenses contains an element that the other does not, convicting defendant of both offenses did not violate double jeopardy. *Miller*, 498 Mich at 19.

## 4. OWI-SI AND RECKLESS DRIVING CAUSING SERIOUS IMPAIRMENT OF A BODY FUNCTION

Defendant next argues that "[i]t is impossible to commit OWI-Injury without committing Reckless-Injury" because "[b]oth require that defendant acted in a reckless manner."

Like OWI causing death, OWI-SI is contained within MCL 257.625, with the distinguishing element being the nature of the injury caused. We thus quote only from the provision pertinent specifically to OWI-SI, which is MCL 257.625(5), without repeating the other referenced subsections that we have already quoted above. MCL 257.625(5), as amended by 2014 PA 219, provided in pertinent part:

> A person, whether licensed or not, who operates a motor vehicle in violation of subsection (1), [or] (3) . . . and by the operation of that motor vehicle causes a serious impairment of a body function of another person is guilty of a crime . . . .

The offense of reckless driving causing serious impairment is likewise related to reckless driving causing death, with both crimes being located in MCL 257.626. Again, without repeating provisions that we have quoted above, this statute provides in pertinent part as follows:

> (3) Beginning October 31, 2010, a person who operates a vehicle in violation of subsection (2) and by the operation of that vehicle causes serious impairment of a body function to another person is guilty of a felony punishable by imprisonment for not more than 5 years or a fine of not less than $1,000.00 or more than $5,000.00, or both. . . .

Neither statute contains any indication of the Legislature's intention with regard to the permissibility of multiple punishments, so we turn to the abstract legal-elements test. *Miller*, 498 Mich at 19. We conclude that defendant's convictions of these two offenses did not violate double jeopardy for the same reasons that his convictions for OWI causing death and reckless driving causing death did not violate double jeopardy. Regarding OWI-SI, the identical language in MCL 257.625(5) and MCL 257.625(4), both of which expressly incorporate subsections (1) and (3), is interpreted in the same manner. *Derror*, 475 Mich at 334. We take the same approach to the identical language in MCL 257.626(3) and (4) with respect to the reckless driving offenses. Cf. *id*.

Reckless driving causing serious injury requires the prosecution to prove that a defendant operated a vehicle "in willful or wanton disregard for the safety of persons or property," MCL 257.626(2) and (3), which is not an element of OWI-SI, see *Head*, 323 Mich App at 532; *Schaefer*, 473 Mich at 422 n 4; *Derror*, 475 Mich at 334. OWI-SI requires proof related to the defendant's intoxication or visible impairment, MCL 257.625(1), (3), and (5); *Schaefer*, 473 Mich at 434; *Derror*, 475 Mich at 334, while reckless driving causing serious injury contains no such elements, MCL 257.626(2) and (3). Because each of these offenses contains an element that the other does not, convicting defendant of both offenses did not violate double jeopardy. *Miller*, 498 Mich at 19.

## 5. NUMBER OF CONVICTIONS

Finally, we address defendant's argument that he should only have received one conviction for each deceased victim and for each injured victim in this case, although each of those convictions was supported by multiple "theories." In support of this argument, defendant argues that this Court held in *People v. Bigelow*, 225 Mich App 806; 571 NW2d 520 (1997) (*Bigelow I*), that "such dual convictions arising from the death of a single victim violate double jeopardy." Defendant further argues that this Court subsequently held in *People v Bigelow*, 229 Mich App 218, 222; 581 NW2d 744 (1998) (*Bigelow II*), that "the appropriate remedy to protect defendant's rights against double jeopardy is to modify defendant's judgment of conviction and sentence to specify that defendant's conviction is for one count and one sentence of first-degree murder supported by two theories: premeditated murder and felony murder."

In *Bigelow I*, 225 Mich App at 806, this Court held that the defendant's convictions of first-degree premeditated murder and first-degree felony murder violated double jeopardy because "[m]ultiple murder convictions for one killing violate the constitutional guarantee against double jeopardy." This Court further explained that "[b]y providing felony murder and premeditated murder as alternative theories of proving first-degree murder, our Legislature authorized two mental states as alternative means of proving the same crime." *Id*. at 807. We also stated that these two mental states were "alternative means of satisfying the mens rea element of the single crime of first-degree murder." *Id*. (quotation marks and citations omitted).[7] In *Bigelow II*, a conflict panel of this Court resolved a conflict regarding the remedy for the above double jeopardy violation and held that " 'the appropriate remedy to protect defendant's rights against double

---

[7] See also MCL 750.316(1)(a) and (b), which generally provide that both premeditated murder and felony murder constitute first-degree murder.

-11-

jeopardy is to modify defendant's judgment of conviction and sentence to specify that defendant's conviction is for one count and one sentence of first-degree murder supported by two theories: premeditated murder and felony murder.'" *Bigelow II*, 229 Mich App at 220-221, quoting *Bigelow I*, 225 Mich App at 806.

Defendant's reliance on *Bigelow I* and *Bigelow II* is misplaced. Contrary to defendant's characterizations of his convictions, defendant was not convicted of a single crime with respect to each victim (such as first-degree murder as in *Bigelow I* and *II*) that was supported by legislatively authorized alternative mental states, all contained within a single statute. Defendant was convicted of multiple, distinct crimes that were defined in separate statutes with respect to each victim. The double-jeopardy issue with respect to these convictions involved the determination whether, despite the seemingly separate offenses defined in separate statutes, these crimes nonetheless constituted the "same offense" for double jeopardy purposes under the *Blockburger* test. Our holding in *Bigelow I*, was specific to the offense of first-degree murder and does not stand for the broader proposition that it is a violation of double jeopardy to convict a defendant of more than one crime per death or injury caused. Accordingly, defendant's reliance on *Bigelow I* and *Bigelow II* does not demonstrate that he is entitled to any relief on appeal regarding his double-jeopardy arguments.

### III. SCORING OF OFFENSE VARIABLES 5, 17, AND 19

Defendant next argues that the trial court erred in scoring three offense variables (OV) in calculating his sentencing guidelines range. He challenges the trial court's assessment of 15 points for OV 5, 10 points for OV 17, and 10 points for OV 19. Defendant concedes that he did not challenge any of these scoring decisions at sentencing, in a motion for resentencing, or in a motion to remand filed in this Court. Therefore, these scoring challenges are unpreserved. *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016).

Furthermore, defendant concedes on appeal that even if he were to prevail on all of his scoring challenges, there would be no effect on his guidelines range. Defendant's guidelines range was determined to be 43 to 86 months. Defendant's minimum sentence for each of his involuntary manslaughter convictions and OWI causing death convictions was 86 months. He was sentenced for his other convictions as previously noted, and each of those sentences was less than 86 months. Accordingly, there is no dispute that defendant's minimum sentence was within the appropriate guidelines range.

MCL 769.34(10) provides as follows:

> If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence. *A party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals*. [Emphasis added.]

In *People v Kimble*, 470 Mich 305, 310-311; 684 NW2d 669 (2004), our Supreme Court explained that

> pursuant to § 34(10), a sentence that is *outside* the appropriate guidelines sentence range, for whatever reason, is appealable regardless of whether the issue was raised at sentencing, in a motion for resentencing, or in a motion to remand. However, if the sentence is *within the appropriate guidelines sentence range*, it is only appealable if there was a scoring error or inaccurate information was relied upon in determining the sentence *and the issue was raised at sentencing, in a motion for resentencing, or in a motion to remand*. [Emphasis added.]

> Our Supreme Court has further clarified that
> if the defendant failed to raise the scoring error at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the Court of Appeals, and the defendant's sentence is within the appropriate guidelines range, the defendant *cannot raise the error on appeal* except where otherwise appropriate, as in a claim of ineffective assistance of counsel." *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

Because there is no dispute that defendant's sentence is within the appropriate guidelines range and that defendant failed to raise the alleged scoring errors at sentencing, in a proper motion for resentencing, or in a proper motion to remand, defendant is precluded from raising these alleged errors on appeal.[8] MCL 769.34(10); *Francisco*, 474 Mich at 89 n 8; *Kimble*, 470 Mich at 310-311. We are aware that in *Kimble*, our Supreme Court reviewed for plain error the defendant's unpreserved claim of an error in scoring the sentencing guidelines where the error resulted in defendant's sentence being outside the appropriate guidelines range. *Kimble*, 470 Mich at 311-312. In this case, however, defendant expressly concedes that his sentence is *within* the appropriate guidelines range even if he were to prevail on all of his alleged claims of scoring error. This case is therefore distinguishable from *Kimble*.

Nonetheless, we treat defendant's appellate brief as a motion to remand, and we grant the motion for the limited purpose of permitting defendant to raise his scoring issues by motion in the trial court. MCR 7.211(C)(1).

### IV. CORRECTION OF THE JUDGMENT OF SENTENCE

Finally, defendant argues that remand is also necessary to correct a clerical error in his judgment of sentence. At the sentencing hearing, the trial court ordered defendant's sentences for OWI causing death in Counts 3 and 4 to be served consecutively. Defendant's judgment of sentence states:

---

[8] Defendant has not raised any claim of ineffective assistance of counsel either, so these alleged scoring errors have not been presented in that manner either. See *Francisco*, 474 Mich at 89 n 8.

-13-

Counts 3 & 4 to be served consecutive to Count 3. All other counts to be served concurrent to each other.

The judgment of sentence is less than clear in accurately reflecting the nature of the consecutive sentences imposed by the trial court at sentencing. Accordingly, we remand for the ministerial task of correcting the judgment of sentence to more accurately reflect the sentences imposed by the trial court, as stated on the record at sentencing. MCR 7.208(A)(1); MCR 6.435(A).[9]

Affirmed with respect to defendant's convictions and sentences, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Thomas C. Cameron
/s/ James Robert Redford

---

[9] We note that the prosecution does not contest this issue.